CASE 19—ACTION BY THE COMMONWEALTH AGAINST THE PARLIN &
ORENDORFF COMPANY TO RECOVER A PENALTY FOT VIOLATION
OF KY. ST. SEC. 571.—MAY 10.

# Commonwealth v. Parlin & Orendorff Co.

APPEAL FROM TODD CIRCUIT COURT—S. R. CREWDSON, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANT AND COMMONWEALTH APPEALS. REVERSED.

FOREIGN CORPORATIONS—TRANSACTION OF BUSINESS—AGENTS—AP-
POINTMENT—CONTRACT — CONSTRUCTION — STATUTES — CONSTITU-
TIONAL LAW—INTERSTATE COMMERCE—EVIDENCE.

1. Where the absence of an original contract was not accounted
   for and no notice was served on defendant, in possession thereof,
   to produce it, an objection to the introduction of an alleged copy
   was properly sustained.

2. Proof that a foreign corporation engaged in the manufacture of
   farm implements appointed certain residents of T. county, hav-
   ing an established place of business, to sell implements shipped,
   kept and stored at such agents' place of business, without filing
   in the office of the Secretary of State a statement giving the
   name of an agent, and the location of his place of business, where
   process might be served on the corporation, as required by Ky.
   St., 1903, sec. 571, was sufficient to sustain an action for a penalty
   prescribed for violation of such section.

3. A contract by a foreign corporation with residents of Kentucky,
   appointed the latter its agents to receive, keep, and sell farm
   implements manufactured by the corporation. The corporation
   retained title to all goods until sold, and the contract contained
   minute provisions relating to the manner of sales, securities to
   be taken, etc., and for the rendition of regular accounts of sales.
   The price of the goods, however, was made to the agent according
   to special agreement at the time they were ordered; he being ex-
   pected to obtain his profit by selling at an advanced price, to-
   gether with the five per cent. commission on all cash remitted
   for sales within a prescribed time. HELD, a contract of agency
   only, and not a contract of sale by the owners, as wholesalers, to
   the alleged agents as retailers.

4. Ky. St., 1903, sec. 571, requiring all corporations doing busi-
   ness within the State to file in the office of the Secretary of State

a statement giving the name of an agent, and the location of his place of business, where process could be served on him for the corporation, in so far as it affected a foreign corporation engaged in selling farm implements through a resident agency in Kentucky, and not through drummers, is not a regulation of interstate commerce.

5.  In an action against a foreign corporation to recover a penalty for doing business within the State without first appointing an agent on whom process may be served, as required by Ky. St. 1903, sec. 571, the record of a prior proceeding in which defendant brought suit against the administrator of its former agent in Kentucky was irrelevant.

N. B. HAYS, ATTORNEY GENERAL AND JAMES R. MALLORY FOR APPELLANT.

Appellant's contention is:

1.  That the court erred in allowing the defendant to enter a plea of "not guilty" at the July term of court, 1902, and thereafter at December term to file an answer. The plea of not guilty put in issue every allegation in plaintiff's statement, and placed the burden on the plaintiff to establish same by proof.

2.  The court erred in refusing to allow to be read as evidence a copy of a contract between defendant, by agent, and the firm of Glenn & Gates showing that defendant had appointed said firm its agent for receiving and selling its goods in its behalf.

3.  The court erred in giving a peremptory instruction to the jury to find defendant not guilty, as there was clearly some evidence tending to establish its guilt, and where there is any evidence the case should be given to the jury.

### AUTHORITIES CITED.

Ky. Stat., sec. 571; L. & N. R. R. Co. v. Com., 23 R., 1900; Com. v. Read Phosphate Co., 23 R., 2284; Knoxville Nursery Co. v. Com., 21 R., 1483; Associated Press v. Com., 22 R., 1229.

S. WALTON FORGY FOR APPELLEE

### POINTS AND AUTHORITIES CITED.

1.  The Commonwealth must show beyond a reasonable doubt that the defendant is a foreign corporation; that it carried on business in Todd county, Kentucky; and that this was done by the defendant's duly authorized agent, and within twelve months

prior to the filing of the petition herein, March 3, 1902. Sec. 571, Kentucky Statutes; Commonwealth v. Grand Central Building & Loan Co., 17 Ky. Law Rep., 215; L. & N. R. R. Co. v. Commonwealth, 23 Ky. Law Rep., 1900; Mechem on Agency, secs. 745-6; Section 1138, Kentucky Stats.

2.   Defendant was not entitled to introduce a copy of the contract made between defendant and the firm of Glenn & Gates, Mechem on Agency, sec. 100; Underhill on Evidence, secs. 30 and 73; Greenleaf on Evidence, secs. 563a and 563b and 563d, edition, 1899; 1 Starkie on Evidence, secs. 350, 351, Am. & Eng. Ency. Law, vol. 16, p. 845; Nutall v. Brannin, 5 Bush, p. 11; Handly v. Fitzhugh, 1 Marshal, 26; Dupey v. Ashby, 2 Mar., 12; Hughes v. Easten, 4 J. J. Mar., 573; Benjamin v. Ellinger, 4 Ky. Law Rep., 317; Ormsby v. Louisville, 2 Ky. Law Rep., 298.

3.   The statements of J. V. Hardy that he claimed to be the agent of the defendant is not admissible, and can not be considered evidence. Mechem on Agency, sec. 100; Underhill on Evidence, sec. 73.

4.   Defendant can not be punished unless the carrying on of the business was done in Todd county, Kentucky. Commonwealth v. Grand Central Building & Loan Co., 17 Ky. Law Rep., 215.

5.   Defendant can not be punished for any business that was interstate commerce. Commonwealth v. Read Phosphate Co., 23 Ky. Law Rep., 2284; Commonwealth v. Hogan, McMorrow & Tieke Co., 25 Ky Law Rep., 41, and authorities therein cited.

6. All business carried on more than twelve months before March 3, 1902, the date of the filing of plaintiff's petition, was barred by the statutes of limitation. Section 1138 Ky. Stats.

7. The defendant can not be punished for anything that Glenn & Gates did unless they were duly authorized by the defendant. Mechem on Agency, secs. 745-6.

8. If the firm of Glenn & Gates were acting for themselves, and carrying on business in Kirkmansville, the defendant can not be punished. Associated Press Co. v. Commonwealth of Ky., 22 Ky. Law Rep., 1229; Allan v. Tyson-Jones Buggy Co., 40 S. W. Rep., 393; Keating Implement and Machine Co. v. Favorite Carriage Co., 35 S. W. Rep., 417.

9. Defendant had a right under the Constitution of the United States, by virtue of the interstate commerce clause, to ship these goods to merchants at Kirkmansville, and they can not be punished under section 571 of the Kentucky Statutes, and the fact that the defendant retained title to the goods did not change the principle of the law involved. Commonwealth of Ky. v. Read Phosphate Co., 23 Ky. Law Rep., 2284; Commonwealth of Ky. v. Hogan, McMorrow & Tieke Co., 25 Ky. Law Rep., 41; Allan

Commonwealth v. Parlin & Orendorff Co .

v. Tyson-Jones Buggy Co., 40 S. W. Rep., 393; Keating Imple-
ment and Machine Co. v. Favorite Carriage Co., 35 S. W. Rep.,
417; Miller v. Goodman, 40 S. W. Rep., 718; Bertha Z. & M. Co.
v. Clute, 7 Misc. (N. Y.), 123; Shaw Piano Co. v. Ford, 41 S. W.
Rep., 198; Wrought Iron Co. v. Johnson, 84 Ga., 74; Pabst Brew-
ing Co. v. City, 98 Fed., 330; Aultman v. Holder, 68 Fed. Rep.,
467; Stratford v. City, 110 Ala., 618.

10. The making of one contract, or one sale is not proof of a
carrying on of business. Hayes v. Commonwealth, 21 Ky. Law
Rep., 1418; Cooper Mnfg. Co. v. Ferguson, 113 U. S., 722.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This is a penal action, under section 11 of the Criminal
Code of Practice, against appellee company, a corporation,
for the alleged violation of section 571, Kentucky Statutes
1903. It is charged that appellee carried on business in this
State, in Todd county, without first having filed in the office
of the Secretary of State the statement required by section
571, giving the name of an agent, and location of his place
of business, where process could be had upon him for the cor-
poration. At the close of the evidence for the Common-
wealth, the court peremptorily instructed the jury to find the
defendant not guilty. This appeal involves the determination
of whether there was any evidence tending to establish ap-
pellee's guilt.

Appellee is an Illinois corporation engaged in the manu-
facture and sale of farm implements and vehicles. One Lean-
der Gates, of the firm of Glenn & Gates, dealers in such im-
plements at Kirkmansville, in Todd county, was introduced
as a witness for the State. He testified that his firm, within
a year before the beginning of this proceeding, had in their
custody a lot of buggies, wagons, and farm implements, the
property of appellee, which they, as agents for appellee, were
offering to sell, and that they had sold some of them, although
the witness could not recollect and would not undertake to

detail any transaction where an actual sale had occurred within the year. The witness was asked whether his contract with appellee was in writing. He answered that it was. Upon being requested, he produced what he said was understood to be a copy of it. He would not say, however, that it was a copy, or whether he had ever compared it with the original. The original contract was not produced, nor was its absence accounted for, nor was a notice served upon appellee to produce it. The objection of appellee to the introduction of the alleged copy was therefore properly sustained.

It is argued that, as the contract between appellee and its agents Glenn & Gates was not proven, the Commonwealth failed to establish its case. We think not. The terms of the contract do not appear to us to be at all material to this prosecution. The fact that Glenn & Gates conducted appellee's business in Todd county, in this State, within a year before the beginning of the prosecution, by selling or offering to sell their wares at an established place of business, and not as drummers—the wares being stored and kept at the agents' place of business—was enough to sustain the prosecution. What appellee was to pay its agents for their services, or how, or when, or at what prices the goods were to be sold, does not appear to us to be material in this case. The copy of the contract above alluded to, if it is a copy, would be relevant only as indicating whether Glenn & Gates were agents of appellee in the sale of the goods, or whether they were themselves purchasers of the goods; the contract alluded to being the evidence of the terms of the sale, securing to appellee payment of the selling price of the goods. The latter seems to be appellee's version of what the contract is. The contract—at least, the purported copy—is as follows:

"Agency Contract."

"This agreement, made and entered into this second day of October, 1901, by and between Parlin & Orendorff Company, of St. Louis, Missouri, first party, and Glenn & Gates, of Kirkmansville, Kentucky, second party;

"Witnesseth: Said first party does hereby appoint said party its agent for the receiving, keeping and selling in its behalf, of such goods as are designated, in the price list hereto attached, such agency to continue until the first day of January, 1903, unless sooner terminated by the said first party.

"Said first party agrees to furnish to the said second party any such goods mentioned in the price list hereto attached as may be ordered by said second party during the continuance of this agency, upon the following terms and conditions, viz.:

"Said second party shall, at his own expense, keep all goods shipped by first party under this contract, insured against loss by fire, to the benefit of said party, to an amount not less than two-thirds of the invoice price of the goods so shipped, while in his custody, and shall safely house or store, and keep free from taxes or other charges to said first party, all such goods, and shall be responsible for said goods, and for all damages to said goods while in his possession. First party is to have insurance issued, send invoice for cost of same to second party, who agrees to remit for the expenses of same immediately upon the receipt of such invoice.

"Said second party is to have the exclusive sale in Kirkmansville, Kentucky, of all implements manufactured by the first party, as shown by the list hereto attached, during the continuance of this contract, and is not to handle any other goods of such classes manufactured by any party other than the first party.

"All goods shipped to said agent under this contract will

be invoiced to him at a certain price to be agreed upon at the time of such order, and such agent to sell said goods as far as possible for cash, and when sale can not be made for cash, in no case shall the time of payment of any note extend beyond January first, 1903. He shall take the notes only of parties of well-known responsibility and good reputation, for the payment of their debts in the locality where they reside; and the said first party reserves the right at any time to reject any note taken by agent, in case it shall not be deemed good by the first party. in which event said second party agrees to take up said note in cash or in commercial paper satisfactory to said party.

"Said second party is to see that all the implements are properly set up, and is to deliver no goods until settled for by cash or notes taken on blanks furnished by first party, duly filled out, without alteration or erasures.

"Said second party agrees to keep all moneys and notes received on said sales separate and apart from other transactions, and to remit the full invoice price of all goods sold in cash or note to said first party, first endorsing each note in the following form, viz.: For value received, I hereby promise to pay the within note at maturity or any time thereafter, or any renewals of the same, and hereby waive protest, demand and any notice of nonpayment thereof.

"Any notes turned over to first party by second party that shall remain unpaid sixty days after maturity, are to be taken up by said second party. This contract is to be a full guarantee for the payment of all notes turned over to first party by second party and a failure of said agent to endorse said note shall not affect this guarantee. Said second party agrees to defend and collect said notes without expense to said first party.

"The ownership of all goods under this contract shall re-

main in said first party until sold in the usual course of trade by said agent, and the proceeds of all sales of goods to the amount of the invoice price thereof, whether in cash, notes or accounts, shall at all times be the property of the said first party. Settlement between parties to be made on the first of each month for all goods sold during the previous month, and remit proceeds of all sales for goods furnished under this contract. As soon as sold in the same proportion as the sales are made; either cash, part cash and part in notes or all notes, at the invoice price thereof, to said party of the first part. Final settlement to be made July 1st, 1902, for the spring trade, and November 1st, 1902, for the fall trade, and at such time said party of second part shall turn over to said first party cash or notes as hereinbefore provided, for the full invoice price of the goods shipped under this contract, which have been sold by said second party. The difference between the invoice price and expenses (including freight, taxes and insurance) and the price at which said goods are sold by said second party is to be in full for, all compensation and expenses under this contract.

"Conditions named under head of notice and warranty form part of this contract.

"First party is not to be liable for damages on account of its inability to fill any order sent in by the said second party.

"Five per cent. commission will be allowed the said agent on all cash paid said first party on the first of the month following any sale or sales, or within fifteen days from the date of any invoice. No commission is to be allowed on payments made at regular time for settlement.

"This contract may be revoked by said first party at any time without notice of said second party, and in case of revocation, settlement shall at once take place between said parties for all goods sold unto date, and all goods remaining

unsold shall be delivered to said first party, at some point in Hopkinsville, Kentucky, as may be designated by first party free of freight and charges both ways or to some point nearer Kirkmansville as first party may direct.

"By agreement between the parties hereto, this contract is to cover and embrace any and all goods now in the hands of said second party held under any previous contract or agreement between the parties hereto and such goods are to be sold and settled for as herein provided, irrespective of the terms of any previous contract. Also all goods received from G. D. Rose stock, except wagons, as per list of same with prices and terms attached, dated November 1st, 1901.

"This contract shall not be binding until acceprance is endorsed thereon at St. Louis, Missouri, by Parlin & Orendorff Company.

"Parlin & Orendorff Company,

"By J. V. Hardy, Traveling Agent.

"[Signed]                     Glenn & Gates.

"Accepted by Parlin & Orendorff Company.

"St. Louis, Mo., ———, 190——.

"Manager."

We are of opinion that such contract as the copy above indicates constitutes only an agency, and is not a selling by the owners, as wholesalers, to the alleged agents, as retailers; retaining merely a lien upon the property to secure the payment for goods delivered under it.

It is next insisted by appellee that it was engaged in interstate commerce, and that the requirement by the Commonwealth of Kentucky that it should comply with the conditions imposed by section 571, Kentucky Statutes 1903, was an interference in the nature of a regulation of interstate commerce, and is therefore repugnant to the Constitution of the United States. Section 571 makes the same re-

quirements of all corporations, whether domestic or foreign. It applies only to those corporations doing business in Kentucky, and having an established place of business therein. To sales by nonresidents or foreign corporations, effected by drummers or correspondence, or otherwise than through agents at an established place for conducting such business in this State, the section does not apply. Commonwealth v. Hogan, etc., 25 Ky. Law Rep., 41 74 S. W., 737. That the State may, in the fair exercise of its police power, compel all corporations establishing a place of business within the State, and carrying on business thereat, to comply with the conditions of section 571, is not violative of the provision of the Constitution of the United States reserving to Congress the exclusive control of the regulating of commerce between the States is settled in this State by the cases of Commonwealth v. Read Phosphate Co., 23 Ky. Law Rep., 2284, 67 S. W., 45; Knoxville Nursery Co. v. Commonwealth, 21 Ky. Law Rep., 1483, 55 S. W., 691; Commonwealth v. Hogan, etc., Co., *supra*.

One G. D. Rose had prior to October, 1902, handled appellee's goods in Kirkmansville, as its sole representative. Rose died about October, 1902, and appellee subsequently brought a suit against his administrator to recover certain wagons and other vehicles and implements, claiming in the suit that it was the owner of the goods, and that Rose was merely its selling agent. Appellee filed with its petition against Rose's administrator copies of what purported to be contracts between them, showing such agency. In this prosecution the Commonwealth was permitted to prove the contents of the suit against Rose. For what purpose, we can not understand, unless it was to show that appellee had an established agency at this point. This, however, might have been done, as it was, by other evidence. The Rose suit was

more apt to be misleading than helpful to the jury. The danger is that the jury might infer that, because appellee had had a contract with Rose constituting him an agent to do business for it in Todd county at a time that is now barred from prosecution by the statute of limitation, probably appellee had the same arrangement, or a similar one, with Glenn & Gates. We are of opinion that the Rose record was irrelevant.

But for the reasons indicated the judgment is reversed, and cause remanded for a new trial under proceedings consistent herewith.