## Sinnett, et al. v. J. R. Watkins Company.

(Decided April 20, 1926.)

### Appeal from Daviess Circuit Court.

1. Evidence—Mere Letters or Old Books, Designating Party to Written Contract as Agent, are Inadmissible to Alter or Change its Terms.—Where contract specifically provides terms shall not be changed, except by writing executed by parties, mere letters or old books on salesmanship, designating seller as agent, are inadmissible to alter or change terms.

2. Sales—Contract of Foreign Corporation Furnishing Goods for Resale Held Contract of Sale, and Not Agency Contract.—Contract of foreign corporation to furnish goods at wholesale prices for resale, providing that purchaser might buy for cash or on credit, and that amount of sales depended on resales by purchaser, held contract of sale, and not agency contract, notwithstanding provisions that purchaser canvass territory and make reports of sales, and that seller would take back goods undisposed of at termination of contract.

3. Commerce—Corporations—Where Contract of Foreign Corporation was with Local Individual for Sale of Goods, it was Engaged in Interstate Commerce, and Failure to Comply with Statutes, Section 571, would Not Defeat Recovery Against Buyer.—Where contract of foreign corporation with local individual was one for sale of goods, and not creation of agency, transaction was one of interstate commerce, and failure of corporation to comply with Kentucky Statutes, section 571, would not defeat recovery in action against buyer of goods.

4. Guaranty—Negotiable Instrument Act held inapplicable to written guaranty contract, as respects question of material alteration.

5. Guaranty—Signing of Guaranty Contract by Others, Without Knowledge or Consent of First Guarantor, Held Not Material Alteration, Available as Defense in Action on Guaranty.—Where guaranty on its face provided for signature of more than one guarantor, signing by others without express knowledge or consent of first guarantor held not material alteration, available as defense in action on guaranty.

6. Intoxicating Liquors—In action for Balance on Sale of Liquid Mixtures Outside of State, Answer Stating that Mixtures Contained Alcohol and were for Purpose of Resale in Local Option Territory Held Not to State Defense (Kentucky Statutes, 1915, Section 2557a; National Prohibition Act [U. S. Comp. St. Ann. Supp. 1923, Section 10138¼ et seq.]).—In action for balance due on sale of liquid mixtures by plaintiff, a foreign corporation, outside of state, answer alleging that mixtures contained alcohol and were intended for resale in local option territory, contrary to Kentucky Statutes 1915, section 2557a, but failing to plead that resales were in violation of present Prohibition Act, or National Prohibition Act (U. S. Comp. Stats., Ann. Supp. 1923, section 10138¼ et seq.), or that liquid mixtures were beverages, which would produce or cause intoxication, or that special tax was required for sale, held not to state defense.

W. E. AUD, J. R. HIGDON and J. R. HAYS for appellants.

TAWNEY, SMITH & TAWNEY, E. D. LIBERA and SLACK, BIRKHEAD & SLACK for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The J. R. Watkins Company, a Minnesota corporation, brought this action against J. L. Sinnett, and Val C. Norris, E. K. Smith and I. B. Ware, who guaranteed the payment thereof, to recover a balance due for certain medicinal preparations and other articles alleged to have been purchased by Sinnett. From a judgment in favor of plaintiff, Sinnett and Norris have appealed.

The principal defense was and is that the contract was void because appellee was engaged in doing business in this state without having complied with section 571, Kentucky Statutes, requiring every corporation to file in the office of the secretary of state a statement giving the name of an agent upon whom process can be served. With the exception of certain formal and immaterial portions, the contract sued on is as follows:

"THIS AGREEMENT, made at Winona, Minnesota, U. S. A., this 1st day of December, A. D.

1919, between THE J. R. WATKINS COMPANY, a Minnesota corporation, hereinafter called the company, party of the first part, and J. L. Sinnett of Whitesville, Ky., party of the second part:

"WITNESSETH, that for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the company promises and agrees to sell and deliver to the party of the second part free on board cars at Winona, Minnesota, or at its option, at any of its regular places of shipment, any and all goods and other articles manufactured or sold, or which may hereafter be manufactured or sold by it, unless prevented by fire, insurrection, invasion, strikes or other cause, at the usual and customary wholesale prices as the party of the second part may reasonably require for sale by him from time to time, from the date hereof, in the following described territory, except the incorporated municipalities therein located, to-wit: In the state of Kentucky, in Daviess county, the part east of the L. & N. Ry., including the town of Owensboro. In consideration of the sale and delivery to him, as vendee, f. o. b. cars at Winona, Minnesota, or other regular shipping point as above mentioned, by said company, of the goods and other articles manufactured or sold by it, in such reasonable quantities as he may require for sale in said territory as herein provided, upon the terms herein expressed, the party of the second part promises and agrees as soon as practicable after said goods and other articles are received, to make a thorough and personal canvass of said territory at least four times a year, at his own cost and expense, and to provide a proper outfit therefor, and to sell said goods or so much thereof as possible, and at all times during said term said party of the second part agrees to keep a complete record of all goods disposed of by him and on hand and to make to said company complete regular weekly written reports of the sale and collections, which reports, however, or any of them, may be waived by said company, and also to report the goods on hand and outstanding accounts when requested by said company so to do.

"And the party of the second part promises and agrees to pay to said company at Winona, Minne-

sota, the wholesale prices aforesaid for the goods and other articles sold to him from time to time, as herein provided, and the prepaid freight and express thereon, if any, during said term, at the time and in the manner and in accordance with the provisions of the weekly report blanks of said company to be furnished to the party of the second part, and at the termination of this agreement to pay the whole amount therefor then remaining unpaid, or in cash, within ten days from date of invoice, with the understanding that said company will allow a discount of three per cent, from said wholesale prices on cash payments, provided full payment for all goods previously furnished shall then have been made; but such payments, or any of them, may be waived or extended by the said company without notice to the sureties hereon and without prejudice to the rights or interests of said company, and if the party of the second part shall not pay cash for said goods and other articles so sold and delivered to him, and the payments at the time and in the manner and in accordance with said weekly report blanks, as aforesaid, are insufficient to pay therefor, said company may in its discretion, thereafter either limit the sales herein agreed to be made, or discontinue the same until such indebtedness is paid or reduced as said company may require; and at the termination of this agreement the party of the second part agrees to return by prepaid freight to said company at Winona, Minnesota, or other point, at which the same were delivered, in as good condition as when delivered to him, f. o. b. cars, all of said goods undisposed of by him, and the company agrees to receive such goods, if the same are in such condition when received at Winona, Minnesota, or other point at which they were delivered to the party of the second part, f. o. b. cars, and pay or credit the party of the second part therefor at the same prices at which the same were sold and delivered, and if not in such condition when so received the company shall make a reasonable charge for putting them in such condition, if that can reasonably be done, and deduct such charge from the amount of the goods so returned, and pay or credit the party of the second part with the bal-

ance thereof, but no goods left by said party with his customers, on time or trial, not paid for by them, or by them partially used and then returned to him, shall be returned to said company, or be paid for by it, or credited to the account of said second party.

"And it is mutually agreed between the parties hereto that the party of the second part shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the canvass and the sale of said goods, and shall have no power or authority to make any statement or representation or incur any debt, obligation, or liability of any kind whatsoever, in the name of, or for, or on account of said company, and that said company shall in no way contribute to the expense of, nor share in the profits or losses on the sales of said goods by said second party, nor have any interest in the accounts due for goods, sold by the said second party, and no printed, advertising or other matter of said company, sent to or distributed by second party, shall be construed to change or modify the terms of this agreement; and that this is the complete, entire and only agreement between the said parties and that it shall not be varied, changed or modified in any respect except in writing executed by the parties hereto. The party of the second part hereby promises to pay said company at Winona, Minnesota, during the term of this agreement, the indebtedness now due it for goods and other articles heretofore sold and delivered to him, as vendee, f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said company is the sum of twenty hundred sixty-five and 64/100 dollars, which sum the second party agrees to pay, and payment of which is extended as above provided. And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail, and any indebtedness then owing from said second party to said company shall thereupon be and become immediately due and payable."

Appellants insist that the contract created the relation of principal and agent. In support of this position it is argued that appellant Sinnett was assigned certain territory, was required to make personal canvass, to keep complete records and report weekly, and to remit one-half of all collections; that the company furnished blank reports, reserved the right to limit sales, gave specific directions how to conduct the business, furnished a book on salesmanship, addressed appellant as salesman, and agreed to accept all unsold goods at the termination of the contract. We need not enter into a lengthy discussion of the question. It was optional with appellee whether it would carry on its business through agents or by sales to others. Formerly, its contracts were so drawn that there was some confusion as to whether they created the relation of principal and agent, or of seller and purchaser. Doubtless with the view of removing the uncertainty, the present form of contract was adopted. By its terms the contract is one of sale. It provides that it shall not be varied, changed or modified in any respect except in writing executed by the parties. Its terms have never been changed by writing executed by the parties, and mere letters or old books on salesmanship designating the seller as agent are not admissible to alter or change the terms of the contract. The purchaser may buy for cash or on credit. The amount of sales depends on the resales by the purchaser, and the provisions that the purchaser shall canvass the territory and make reports of sales are reasonably necessary for the protection of the seller, and are not inconsistent with a contract of sale. Nor is the situation altered by the agreement of the seller to take back the undisposed of goods at the termination of the contract. For these reasons and others that might be mentioned the courts of other states with singular unanimity have decided that a contract like the one in question is a contract of sale and not of agency. Hogg, et al. v. J. R. Watkins Medical Co., 228 S. W. 730 (Arkansas); J. R. Watkins Medical Co. v. Hogue, 138 Ark. 105, 210 S. W. 628. The same conclusion was reached by this court in the cases of Three State Buggy & Implement Co. v. Commonwealth, 105 S. W. 971; Barnes v. Maxwell Motor Sales Corporation, 172 Ky. 409, 189 S. W. 444, Ann. Cas. 1917E 578. A different rule prevails where the contract itself describes the local dealer as agent, and the other provi-

sions of the contract considered in the light of this circumstance are sufficient to show that an agency in fact was contemplated by the parties. Commonwealth v. Parlin & Orendorff, 118 Ky. 168, 80 S. W. 791; Orr's Admr. v. Orr, 157 Ky. 570, 163 S. W. 757. As appellee was not doing business in this state, but the transaction was one of interstate commerce, it follows that section 571 is inoperative and appellee's failure to comply therewith will not defeat a recovery. Louisville Trust Co. v. Bayer Steam Soot Blower Co., 166 Ky. 744, 179 S. W. 1034; Sioux Remedy Co. v. Cope, 235 U. S. 197, 35 Sup. Ct. 57, 59 L. ed. 193.

In addition to other defenses, appellant Norris pleaded that after he signed the contract of guaranty other guarantors signed without his knowledge or consent, and this constituted a material alteration which released him from all liability. As the contract is not an unconditional promise or order in writing to pay on demand or at a fixed or determinable future time a sum certain in money to the order of a specified person or bearer, it is not a negotiable instrument, and the Negotiable Instrument Act is not applicable. On the contrary, it is simply a contract of guaranty, and, even where a guarantor signs an instrument and places it in the hands of the principal to be delivered only on the condition that it be signed by other guarantors, and the condition is not complied with, he is nevertheless bound unless the obligee has notice of the condition, or information sufficient to put a person of ordinary prudence on inquiry. Galbraith v. Shores-Mueller Co., 178 Ky. 688, 199 S. W. 779. Here the contract of guaranty uses the words, "We, the undersigned sureties." In the place for signatures are the words "sureties sign here; business men preferred." Then follow the words "1st surety, 2nd surety, 3rd surety." In other words the contract shows on its face that it was intended to be signed by more than one guarantor, and this was sufficient to put appellant, Norris, on notice that other guarantors would sign. Not only so, but after appellant Norris signed the contract he delivered it to Sinnett, the principal, who obtained the signatures of the other guarantors and then mailed the contract to appellee at Winona, Minnesota. It is therefore clear that all the signatures were obtained before the delivery of the contract, and equally clear that at the time of its delivery appellee had neither actual nor

constructive knowledge that the other guarantors had signed without the knowledge or consent of Norris. In view of these circumstances we are constrained to hold that the trial court did not err in ruling that the defense of material alteration was available.

Appellant Sinnett further contends that the court erred in sustaining a demurrer to his amended answer, which pleaded in substance that all the liquid mixtures sent to him contained more than 5% alcohol and that all the territory in which he was required to sell and did sell said mixtures was local option territory in which such sales were prohibited by the laws of the state of Kentucky. The sales by appellee to appellant Sinnett were not made in the state of Kentucky, and no facts are pleaded showing that such sales were invalid either under the National Prohibition Act or under the laws of the states where made. The only contention is that the liquid mixtures were furnished to appellant to resell in local option territory, and such resales were restricted to and made in that territory. Whether, if this were true, it would defeat a recovery by appellee, we need not inquire. No facts are pleaded showing that the resales by appellant were made in violation of the present Prohibition Act. Prior to this act the statute made it unlawful to sell, barter or loan in local option territory any beverage containing any alcohol or liquid mixture or decoction of any kind which produces or causes intoxication, with the proviso that nothing therein should prohibit the sale, barter or loan, or having in the custody of any person any beverage, liquid mixture or decoction for the sale of which the United States did not require the payment of the special tax on retail liquor dealers. Section 2557a, Kentucky Statutes, 1915. The amended answer did not allege that the liquid mixtures were a beverage, or that they produced or caused intoxication, or that for the sale thereof the United States required the payment of a special tax on retail liquor dealers. That being true, the facts alleged do not show that the liquid mixtures were furnished for resale in violation of law, or that they were actually sold in violation of law. Hence, the amended answer stated no defense, and the demurrer thereto was properly sustained.

Judgment affirmed.