### W. T. RAWLEIGH CO. v. BROWN *et al.**

(Division B. May 24, 1926.   Suggestion of Error Overruled
June 15, 1926.)

[108 So. 720.   No. 25528.]

1. GUARANTY.  *False statements made by principal in contract guaranteeing payments for merchandise held erroneously admitted in action against guarantors, since plaintiff had no knowledge of statements made to guarantors, and principal was without authority to bind plaintiff thereby.*

    In action against guarantors on contract for merchandise, admitting in evidence false statement of principal to guarantors that he was in good standing with plaintiff at time of signing contract *held* erroneous, as not showing fraud of plaintiff, so far as alleged false representations were concerned, since they were made without knowledge of plaintiff, and without any authority of principal to bind plaintiff by such statements.

2. GUARANTY.

    Contracts must be enforced as written, although resulting in hardship on those undertaking to guarantee success of principal in contract.

---

*Corpus Juris-Cyc References: Guaranty, 28CJ, p. 927, n. 48; p. 937, n. 41; p. 1028, n. 46; p. 1032, n. 97, 98.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by the W. T. Rawleigh Company against C. E. Brown and others. Judgment for defendants, and plaintiff appeals. Reversed and judgment rendered.

*Shannon & Schauber,* for appellant.

This suit is based upon the printed guaranty executed by the defendants who delivered the same to J. M. Dyar, the principal named in the guaranty, who forwarded the same to the plaintiff. The only defense set up by the appellees in the court below was that the company furnished Dyar, their principal, with a guide book, booklets, bulletins, circulars, leaflets and advice that induced the said Dyar to purchase an excessive stock and sell the goods on "time and trial," which resulted in the said Dyar losing money and for that reason the guarantors were relieved from paying the debt on account of such advice and suggestions which they claim were fraudulent.

Under the terms of the written contract referred to in the guaranty signed by the appellees, the appellant not only had a right, but it was its duty to furnish the said Dyar with "Rawleigh's Weekly, guide book, leaflets, bulletins, circulars, and advice and suggestions," none of which, however, were to be "binding or to be considered as orders, directions, or instructions from the Company to Dyar."

There was nothing illegal in furnishing Dyar a guide book, bulletins, etc., in an educational way, especially when it was agreed that such suggestions were not to be binding on said Dyar, nor were the same to be construed as orders or directors from the company to him. For the law in reference to guaranties, see *Davis Sewing Machine Co.* v. *Rosenbaum et al.,* 16 So. 340.

We submit that under the decisions of this court in *Colt Co.* v. *Odom,* 101 So. 853; and *Coombs* v. *Wilson, Trustees,* — So. —, the appellant was entitled to a per-

emptory instruction for the amount sued for.   If there was any fraud perpetrated on the appellees, it was done by J. M. Dyar, the principal, for whose actions the appellant was in no way responsible.

On the trial, the court over the objection of the appellant permitted each of the guarantors to testify that Dyar informed them at the time they executed the guaranty that he, Dyar, had a "clean sheet" with the company and offered to show a letter which he claimed was written by appellant.

We submit that under no view of the law governing this case, construing similar contracts, can the above statements of Dyar, the principal, made to the guarantors at or before the signing of the contract of guaranty, be rendered competent.

The fact that Dyar, their principal, made misrepresentations, and if the statements of the guarantors are to be believed, he certainly, at least, mislead them in order to obtain their signatures to the contract of guaranty, does not affect the liability of the guarantors to appellant under said written guaranty.   It is nowhere shown in the record that appellant had any notice whatever of the misstatement made by Dyar to the guarantors at, or before, the execution of the said guaranty. Appellant on its part carried out the terms of the written guaranty by granting Dyar additional time in which to pay the indebtedness that he was then owing it, and it further granted Dyar additional credit by selling and shipping him more goods, all of which were provided for in the written guaranty.

For cases construing similar contracts, see:   *W. G. Rawleigh* v. *Rose,* 202 S. W. 849 ; *Hughes* v. *Rawleigh,* 208 S. W. 295.

*Davis & Hill,* for appellees.

The charge of fraud was overwhelmingly proved on the trial of the case.   The falsity of the representations

contained in the guide book and literature is apparent from a mere reading of same. It will be seen by the court that while the company itself is not willing to sell to strangers because of the risk, yet it asks its retailers to sell on a credit.

The law required the highest faith on the part of this company toward these appellees and it was a fraud upon the said Dyar and upon the appellees to conceal from them the nature and character of the literature mentioned in the contract. Moreover, it was a fraud to induce the said Dyar to do the kind of business mentioned. There can be no doubt that the statement in the contract that the literature to be furnished the said Dyar would be educational and advisory was false and vitiated the contract and since the assent of the appellees' signatures to the said contract was not voluntarily obtained but was fraudulently obtained, the contract is not binding. We submit the following authorities in support of our contentions: 32 Cyc., p. 59; 20 Cyc., p. 1419.

Nor can the facts that appellees signed a new guaranty guaranteeing the payment of past accounts as well as future advances help the appellant because the said contract contained fraudulent statements that the literature to be furnished was educational.' The first contract contained the same provision. If Dyer was the agent of the company under the first contract, he was bound to be the company's agent when he obtained the signatures of the appellees to the second contract, and he represented to them, not only that he had received a letter from the company congratulating him on the year's business, but that he had a clean slate with the company.

Argued orally by *Chas S. Shannon,* for appellant.

HOLDEN, P. J., delivered the opinion of the court.

The appellant, a corporation of the state of Illinois, sued the appellees as guarantors upon a contract of J.

M. Dyar for certain merchandise furnished to Dyar by the appellant, and for which Dyar failed to pay. The appellees, guarantors on the contract of Dyar, defended below on the ground of fraud, which question was decided by the jury in favor of the guarantors. The appeal is from this judgment.

The case is this:

J. M. Dyar contracted with the appellant Rawleigh Company to purchase certain merchandise, which Dyar then retailed to different persons in Jones county, Miss. The appellees, Brown, Barnes, and Stutts, signed an agreement guaranteeing the payment of any amount that Dyar might owe appellant, for goods and merchandise furnished to him, under the contract between them. This guaranty was signed by the guarantors and Dyar, and then forwarded to the appellant at its domicile in Illinois, where the contract of guaranty was accepted, and the goods and merchandise were thereafter sold and delivered to Dyar.

In the course of time Dyar failed to pay for the goods and merchandise furnished him by appellant, and this suit was brought against the guarantors to recover the balance due by Dyar on the indebtedness. At the time the appellees became guarantors, Dyar was then indebted to appellant for goods sold to him on a prior contract. The amount of this indebtedness, and such future indebtedness as might be incurred by Dyar, was covered by the guaranty of the appellees on the contract involved in this suit.

Dyar made certain false representations to the guarantors that induced them to sign the guaranty, so they testified; these representations were that Dyar was in good standing with appellant, owed nothing, and that he had a letter from appellant stating "that he had a clean slate," etc. The testimony of Dyar in this regard was objected to, but was admitted by the lower court.

The defendants below also pleaded that the contract was secured by fraud, in that the appellant had fraudu-

lently suggested and advised Dyar to sell the goods on credit to responsible parties, which would increase the sales, and that it was the fraudulent purpose of appellant to mislead Dyar, and cause him to buy more goods and load himself up to the point where he could not pay for the merchandise. The testimony in the case shows that the appellant would send out suggestions in a guide book to its customers as to how to increase sales, etc. The theory of the appellees seems to have been that the advice thus given by appellant to its customers was fraudulent, in that it caused Dyar to purchase more goods than he was able to pay for, and upon this issue of fraud the case went to the jury. Other theories of fraud were also pleaded and presented in the lower court, but they are so devoid of merit that we shall not mention any of them.

We think the false statement of Dyar to the appellee guarantors that he was in good standing with appellant, etc., was inadmissible in evidence, because the appellant, who accepted the guaranty sent to it in Illinois, had no knowledge of the statement of Dyar to the guarantors, nor did Dyar have any authority to bind appellant by such statement. Dyar was the principal in the bond, and the appellees were the guarantors, and the obligee was not bound by anything that occurred between the principal and the obligors which might have induced the obligors to sign the bond. Therefore no fraud is shown in this case, so far as the alleged false representations made by Dyar to appellees. *Colt Co.* v. *Odom,* 136 Miss. 651, 101 So. 853; *Cresap* v. *Furst & Thomas,* 105 So. 848.

The other theory of fraud which the jury passed upon —that is, that the appellant fraudulently purposed to oversell Dyar, and thus brought about his failure—is manifestly untenable. We have read the testimony in the record in support of this theory, and we are unable to see wherein the appellant perpetrated any fraud in advising Dyar, or in carrying out its contract with him. We see no useful purpose in discussing the testimony in

detail, but deem it sufficient to say that no fraud is shown by the proof. Therefore the lower court erred in submitting the question of fraud to the jury.

The case is simply another instance of accommodating friends guaranteeing the fulfillment of a contract by another who failed in his undertaking. Contracts must be enforced as written, even though it results in a hardship upon those who undertake to guarantee the success of the principal in the contract. This court has rendered several decisions supporting the views set forth above; therefore the judgment of the lower court is reversed, and judgment rendered here for appellant.

Reversed, and judgment here for appellant.

*Reversed.*