## W. T. Rawleigh Company v. Thoroughman et al.

(Decided December 18, 1928.)

W. A. BYRON and M. HARGETT for appellant.

C. R. BARKER and SILAS JACOBS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The W. T. Rawleigh Company, a corporation engaged in the manufacture of medicines and cosmetics, located at Freeport, Ill., sued Roy Applegate as principal and E. C. Thoroughman and F. A. Applegate as sureties to recover a balance of $680 due it on sales of merchandise made by it to Roy Applegate. Various defenses were interposed by the parties, which will be presently noted. The case was heard and tried by the court, who rendered judgment in favor of plaintiff against Roy Applegate for the full amount of its claim, but sustained the defense of Thoroughman and F. A.

Applegate, and dismissed the petition as to them. The W. T. Rawleigh Company appeals.

On January 2, 1923, Roy Applegate and the W. T. Rawleigh Company executed a contract in which the parties were named as buyer and seller respectively, and in which the buyer undertook to purchase goods at his option from the seller during the ensuing 12 months and sell same at retail in Bracken county, Ky., goods to be delivered to him f. o. b. Freeport, Ill.

"The buyer to pay the seller the invoice price for all articles so purchased under the agreement, subject to certain discounts; and any balance due the seller at the date of the acceptance of any renewal contract. . . . Either party may at any time before the expiration of this contract by written notice, terminate this agreement, and when so terminated the account then due and owing shall become immediately due and payable. If not so terminated, this agreement shall expire by limitation on the 31st of December, 1923. . . . It is mutually understood that the seller will furnish the buyer from time to time with educational salesmanship literature, consisting of Rawleigh's Weekly Guide Book and other booklets, bulletins, circulars, leaflets and letters of advice and suggestions for the sole purpose of aiding and assisting buyer in making sales and collections; but it is expressly agreed that nothing in the aforesaid literature, letters, booklets, bulletins, leaflets, etc., shall be taken in any wise to alter, modify, change or affect this agreement and shall only be considered as educational and advisory and it is further expressly understood and agreed that any advice or suggestions contained therein is not to be considered by the buyer as orders, directions or instructions, nor in any way binding on him; it being mutually and fully understood and agreed that the said buyer is not, nor never has been an agent or representative of the seller but in business for himself.

"And it is further understood and agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only and entire agreement between the parties hereto, and further that this contract cannot and shall not be changed or modified in any particular whatsoever by any employe or representative of the seller in any

capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto.''

Concurrent with the execution of the above contract, Thoroughman and F. A. Applegate, as sureties, executed a writing, unconditionally guaranteeing the Rawleigh Company all indebtedness incurred by the buyer under the terms of the above and foregoing instrument, and fully assenting to the terms, provisions, and agreements contained in that instrument.

In their answer the sureties admitted the balance due the plaintiff by Roy Applegate, but asserted the goods were not purchased under the contract sued on. And that without their knowledge or consent the plaintiff, through its guidebooks and other literature sent to Roy Appelgate, advised, directed, and commanded him, under penalty of losing his position if he refused so to do, to sell goods to insolvent parties and to place goods on trial with persons who did not wish to buy, and afterward to take up and destroy such unused goods at his own expense; that thereby Roy Applegate became the agent of the seller, and was not in fact the purchaser under the contract; that the contract in question was a renewal of similar contracts executed on January 2, 1921, and January 2, 1922; and that by reason of the practice aforesaid the defendant Roy Applegate did become heavily indebted to the plaintiff, all without the knowledge or consent of the sureties.

The contract has been construed to create the relation of buyer and seller. Sinnett v. Watkins Co., 214 Ky. 76, 282 S. W. 769; W. T. Rawleigh Co. v. Brown, 143 Miss. 895, 108 So. 720; G. R. Watkins Medical Co. v. Hogue, 138 Ark. 105, 210 S. W. 628; Reese v. W. T. Rawleigh Medical Co., 115 Ark. 606, 172 S. W. 820. A different conclusion was reached in W. T. Rawleigh Medical Co. v. Modde (Mo. App.) 209 S. W. 958. A reference to that opinion will disclose that the contract has been changed in several material features since that opinion was written. But the sureties argue that the contract was modified by the guidebook, and that the buyer was thereby induced to sell goods on credit and give others away on pain of dismissal, and that this was a variation of the original

contract. The guidebook sent to the buyer was filled with advice as to how he should conduct his sales, some of which were ethical, but there are some suggestions that are far from commendable. For instance, after encouraging the buyer to make all the credit sales he can, it continues: ''When everything else fails, and you have offered every inducement you can think of and afford to make, and after you have tried to make cash sales or time or trial sales and all your offers have been rejected, do not give up. There is a final effort which you should make, and if yon can learn to do it well you can generally make at least a good time or trial sale. No doubt during the canvass you will notice that your prospect shows at least some interest in one, two or three of your products. If so, those are the articles you should make your final efforts on. Resolve quickly that you will do your best— that your final effort will be to try to leave them. Picking up these products, first look your prospect square in the eye, appear as pleasant and courteous as you can. Then very seriously say, 'Well, Mrs. Jones, here are some unusually good products; you may never have any use for them, but others like them so well and I am so anxious to have your family become one of my customers, that I will ask a special favor of you.' Then ask this question, 'You will not object to take care of these articles will you?' ''

He being further advised to destroy all the opened and unused trial packages. The naive manner in which high sounding phrases are intermingled with suggestions tending to excite cupidity, shrewd practices, and fear upon the part of the buyer in the guidebook, is far from commendable; but it is insufficient to excuse the obligation of the sureties. While they stand on the highest plane of equity, and any independent contract between the buyer and seller or connivance between them, to the prejudice of the sureties, would relieve the latter, yet it will be observed that the buyer's contract formed a part of the contract signed by the sureties, and in it specific mention was made of the guidebook, and they were put on notice of its use. It was further provided in that contract that such suggestions were merely to assist the buyer in salesmanship, and that he was not required to accept any of it. Presumably this was understood by the buyer, and the issuance of this book did not change the

contract or the course of dealing therein provided; hence this will not relieve the sureties.

It is next urged that the contract was based on a supplemental contract executed simultaneously with the above contract, and which assigned to Roy Applegate a territory including all of Bracken county; and that afterward the seller arbitrarily divided the county to his prejudice, and assigned to another buyer a portion of the county, and that there was due and owing him a number of unpaid bills in the excluded territory. As to this, during the years 1921 and 1922 Roy Applegate did sell in any part of Bracken county that he desired, and upon the renewal of his contract on the 2d of January, 1923, he filed with the company an application for the same territory, and this seems to have been approved by it. However, it appears that he was not able to cover the territory. The seller then made a division of the territory, and he declined to work longer; whereupon the company terminated his employment. But the contract provided that it might be terminated by either party at any time, and even if Applegate got the worst of the division it does not appear that he made any purchases thereafter, or that the liability of the sureties was thereby increased. The indebtedness sued on was created at a time when he had all the territory he desired, and is in no wise affected by the subsequent division of the territory and termination of the contract. It follows that the court should have rendered judgment against the sureties in the amount claimed, and erred in finding in their favor.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.