[No. 24456. Department One. June 3, 1933.]

THE W. T. RAWLEIGH COMPANY, *Appellant*, v. EDWIN HARPER, *Defendant*, N. C. MAUL *et al.*, *Respondents*.[1]

*J. Dorman Searle,* for appellant.

HOLCOMB, J.—This action was brought against these three parties upon the primary liability of Edwin

[1]Reported in 22 P. (2d) 665.

Harper and the other two defendants as guarantors, to recover an indebtedness incurred by and on the part of Edwin Harper in the amount of $1,337.62, under a contract made with appellant. Edwin Harper made no appearance in the action, although he was produced as a witness by respondents, and the cause proceeded against the two guarantors.

The contract was entered into between the parties on about January 2, 1926, to expire December 31, 1926, unless sooner terminated by either party upon notice, as specified in the contract. An instrument of guaranty was signed by Maul and C. C. Harper, in consideration of one dollar and in consideration of the seller extending credit to Edwin Harper, as buyer, jointly and severally guaranteeing and unconditionally agreeing to pay the seller for any and all goods, wares and merchandise sold to Edwin Harper, expressly consenting and agreeing to all the terms, conditions and provisions of the contract between appellant and Edwin Harper and waiving all notice of any nature whatsoever.

They further agreed that it should not be necessary for the seller first to exhaust its remedies against the buyer before proceeding to collect from them, and that the contract is conclusive and binding upon the party or parties who signed it, and that any statement or representations made to any of the sureties by any persons, either as to who or how many parties should sign the surety agreement or as to any other matters not fully expressed in the guaranty agreement, shall not affect the rights of the seller. There are other agreements in the guaranty contract of no particular materiality, as they simply further detail the duties of the buyer and the sureties to the seller.

The principal contract recites that appellant is an Illinois corporation, hereinafter called the seller, who

agrees to sell and deliver to Edwin Harper, as buyer, f. o. b. cars Oakland, California, or at any other point agreed upon, such of its products as the buyer may order, on time, at current wholesale prices. Another material portion of the contract is that it is stipulated that, if the business relations be terminated for any reason, the seller agrees to purchase from the buyer, at wholesale prices current when the goods are received, any merchantable products the buyer may have on hand, etc. The contract further provides:

"It is mutually understood and agreed that this is a contract of buyer and seller, and that the buyer is not the agent or representative of the company for any purpose whatsoever, but is the sole owner and manager of his business, and that he expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the seller, it being mutually understood and agreed that when the seller delivers the merchandise f. o. b. cars to buyer at point of shipment, the merchandise becomes the property of the buyer and the seller retains no right, title, interest or control over said merchandise."

There is another provision immediately following, that it is mutually and fully understood that the buyer is in business for himself, and that the seller does not undertake in any way to control the buyer in the conduct of his business. Then follows the stipulation:

"With the express understanding that it shall impose no legal restrictions whatsoever and that it shall not alter or modify the written terms or conditions of this contract, nor be considered as orders, directions, or instructions, or binding in any way upon the buyer and that it shall be considered only as advice and suggestions intended only to aid the buyer in improving his sales, collections, and service to his customers, (which advice or suggestions he may follow or not as he may choose) the seller will furnish buyer from time to time with Rawleigh Sales Service and collection

methods, consisting of Rawleigh Weekly, Rawleigh methods, and other books, bulletins, service, sales or collection letters, and other letters and literature; it being intended and mutually agreed that this contract shall be the sole and only binding agreement between the parties hereto, and that it shall not be changed or modified in any way or by any person except such change or modification shall be first reduced to writing,'' etc.

In their answer, respondents admit executing the contract in question, admit that they have not paid the $1,337.62 alleged by plaintiff to be due, and deny other allegations in the amended complaint of appellant. As a first affirmative defense, they then allege that appellant is a foreign corporation engaged in the transaction of business in Washington, and, having failed to comply with the laws of Washington relative to foreign corporations, is without capacity to wage this action.

As a second affirmative defense, respondents allege that Edwin Harper and appellant conspired together to defraud respondents, in that they represented that the relationship of appellant to Edwin Harper was that of buyer to seller, whereas they knew the relationship to be that of principal and agent, and therefore any goods delivered to Edwin Harper were not delivered under the contract guaranteed by respondents. They further allege that appellant extended an amount of credit to Edwin Harper which it knew he would never be able to pay, with the hope of collecting from the guarantors and thereby defrauding them. They further allege a general scheme to defraud extending through many states in the United States, such as was alleged in their first affirmative defense.

After trial to the court, it found, among other things, that appellant is a corporation organized and existing under the laws of Illinois, and engaged in the trans-

action of business within the state of Washington other than of an interstate character, by the sale of goods, wares and merchandise within this state and by the employment of agents within this state to solicit, and who did solicit, others to sell its products within this state; and that appellant at no time had filed a certified copy of its articles of incorporation with the secretary of state of Washington, nor filed any appointment of its statutory agent, nor at any time paid annual license fees to the state, either prior to or subsequent to the commencement of this action.

It further found that the contract was entered into between these parties as above recited, and that Maul and C. C. Harper guaranteed the purchases of goods, wares and merchandise delivered by appellant to Edwin Harper while the relationship of seller and buyer was sustained between appellant and Edwin Harper; that notwithstanding the provisions of that agreement, appellant did, by constant directions to Edwin Harper, so control his actions in the sale of the Rawleigh products that he was not free nor permitted to conduct the business of selling Rawleigh products for himself, but was at all times under the control of, and, in fact, the agent of, appellant; and that no goods, wares and merchandise were sold and delivered by appellant to Edwin Harper while in business for himself under the contract, and that none of the obligations incurred by Edwin Harper during the existence of the business relationship with appellant were guaranteed by Maul and C. C. Harper under the contract, or otherwise.

From the foregoing findings, the court concluded, as a matter of law, that Maul and C. C. Harper were entitled to a judgment of dismissal as against appellant with costs. From the judgment of dismissal this

appeal is prosecuted, and is here without any representation on behalf of respondents.

There was no proof whatever of any fraud on the part of appellant inducing either the principal contract or the contract of guaranty, and none was found by the court.

The contract before us is manifestly one establishing the relation of seller and buyer. Like another before the supreme court of Mississippi, *Rawleigh Co. v. Brown*, 143 Miss. 895, 108 So. 720,

"The case is simply another instance of accommodating friends guaranteeing the fulfillment of a contract by another who failed in his undertaking. Contracts must be enforced as written, even though it results in a hardship upon those who undertake to guarantee the success of the principal in the contract."

The instruments were in plain English, and were read by them before signing. They must, therefore, have understood their plain portent.

The principal contract stipulating that the goods are to be delivered f. o. b. cars at Oakland, California, or at any other place designated by the buyer, constitutes delivery to the buyer outside this state, and the goods immediately became the property of the buyer. Rem. Rev. Stat., § 5836-46.

The contract carefully avoids anything that would constitute transaction of business within this state, as such contracts usually do. There is nothing in the evidence that shows in the slightest degree anything approaching the creation of an agency between appellant and Edwin Harper, by modification, or by their letters of instruction to him as to how to sell its goods. That also was carefully provided for in the contract.

Under the strict terms of the contract, Edwin Harper could not vary the terms of his written contract by his parol testimony. *Watkins Co. v. Waldo,*

117 Kan. 250, 230 Pac. 1051. In that case, the court held that a very similar contract to that now before us created the relation of seller and buyer, and not that of principal and agent. A rather extensive review of the cases affecting the question is contained in the opinion in that case, which need not be further discussed herein. See, also, to the same effect, in the same volume, *Rourke v. Gerlach-Barklow Co.,* 104 Okla. 239, 230 Pac. 901; *Watkins Co. v. Poag,* 154 Miss. 222, 122 So. 473; and *Sinnett v. Watkins Co.,* 214 Ky. 76, 282 S. W. 769. The cases herein cited and the cases reviewed in them cover every question involved in the case before us.

The evidence shows appellant to have been engaged solely in interstate commerce. That being so, its instituting an action in this state to recover an indebtedness, does not constitute doing business in the state. *Lilly-Brackett Co. v. Sonnemann,* 50 Wash. 487, 97 Pac. 505; *Smith & Co. v. Dickinson,* 81 Wash. 465, 142 Pac. 1133; *Alaska Pacific Navigation Co. v. Southwark Foundry & Machine Co.,* 104 Wash. 346, 176 Pac. 357.

Although it is true that this court has held in many cases that the findings of a trial court, based upon conflicting evidence or having some substantial evidence to support them, is binding on this court and will not be disturbed, yet, where the findings of the trial court are not based upon any competent and substantial evidence, they are insufficient to support a judgment.

The evidence in this case in support of the affirmative defenses of respondents was wholly incompetent and insufficient to sustain the findings and judgment of the trial court.

It being admitted that the sum of $1,337.62 had not been paid by Edwin Harper, and all such indebtedness

240

being guaranteed by respondents here, appellant is entitled to have judgment against them for that sum.

The judgment of the lower court is therefore reversed, and remanded with directions to enter judgment in favor of appellant as above specified, with interest at the legal rate from the time of the verification of the original complaint and demand therefor, which was February 4, 1929, until paid. Appellant will also recover costs both in the lower court and here.

MILLARD, MITCHELL, BLAKE, and MAIN, JJ., concur.