# Furst & Thomas v. Lyon et al.

(Decided March 2, 1937.)

HOWES & WALKER for appellants.

WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Frank E. Furst and Fred G. Thomas, partners doing business under the firm name of Furst & Thomas, brought this action against F. M. Lyon, as principal, and Arminta Lyon Wheeler and Preston Williams, as sureties, to recover a balance of $220.26, due them on sales of merchandise made by them to Lyon.

On June 2, 1930, F. M. Lyon and Furst & Thomas entered into a contract in which Furst & Thomas agreed to sell on credit to Lyon the products handled by them at their regular wholesale prices, in reasonable quantities as ordered by him from time to time. Lyon agreed to sell these products at retail, and to pay Furst & Thomas in· reasonable installments out of the proceeds of his business until his account was balanced. It was provided that either party might terminate the contract at any time by giving written notice to the other party. Upon its termination by either party for any cause, Lyon agreed to pay within two months the balance due Furst & Thomas on account. The contract further provided that if Lyon wished to sell back his stock of products, he might ship them to Furst & Thomas at Freeport, Ill., and Furst & Thomas agreed to pay him for such products, when received in good condition, their current wholesale price less 10 per cent. to cover the cost of checking, handling, and putting them back into stock. The contract, unless sooner terminated, was to expire December 31, 1932. Attached to the contract was a writing signed by Arminta Lyon Wheeler and Preston Williams unconditionally guaranteeing payment to Furst & Thomas for all products sold by them on credit to F. M. Lyon.

In their answer, the defendants alleged that it was specified in the contract that Furst & Thomas was to give Lyon, as the dealer for their products, advice and suggestions to guide him in the sale and disposition of the merchandise purchased by him, and that they did advise him to place the merchandise on credit in the homes of people residing in the territory in which he traveled, and that, pursuant to such advice, the merchandise was left on credit in the homes of various people and that defendant Lyon was therefore not indebted to plaintiffs in any sum. The case was tried before a jury, which returned a verdict for the defendants, and the plaintiffs have appealed. The principal ground relied upon for a reversal of the judgment

is the refusal of the trial judge to sustain the plaintiffs' motion for a directed verdict in their favor.

The proof shows that F. M. Lyon purchased from appellants goods to the amount of $765.03. All of the goods were purchased on or before September 5, 1930. The contract provided that Lyon should send to appellants weekly statements showing the amounts of his cash and credit sales. His first report was for the week ending Saturday, August 23, 1930, and showed cash sales of $42 and credit sales of $72. He sent additional statements to appellants on September 13, 1930, November 8, 1930, and November 15, 1930. These reports showed that no sales, either cash or credit, had been made. No further statements were sent to appellants, and on April 15, 1931, they terminated the contract. Lyon induced two other persons to enter into dealer contracts with appellants, and he delivered to them a part of the merchandise that had been shipped to him. The appellants credited him with the wholesale price of this merchandise, which amounted to $488.22. They further credited him with the payment of $6.55 in cash, and they allowed him $50 as commissions for obtaining the two dealers. The total credit amounted to $544.77, leaving a balance of $220.26 due the appellants. The appellees did not contest the correctness of any of the credits, but relied on the claim that Lyon was not liable to appellants for the balance claimed to be due to them because they had advised him to place the merchandise on credit with his customers. In his testimony, Lyon failed to account for any merchandise so placed, except the merchandise referred to in his first statement sent to appellants, the retail price of which was $72. He admitted in that statement that he had collected $42, but he failed to explain why he had paid only $6.55 in cash to appellants. The clause in the contract on which he relies reads:

> "Furst and Thomas also agree to give the aforesaid Dealer advice and suggestions based on their experience and on the methods of other successful Dealers retailing their products in a similar way, but it is expressly agreed that nothing contained in such advice and suggestions shall be binding upon the Dealer nor shall be construed as in any way altering or modifying the terms of this agreement."

498

The advice referred to was intended merely to assist Lyon in making sales, and he was not required to adopt the suggestions made by appellants. If he sold goods on credit, the selection of the risks was left to his judgment. In W. T. Rawleigh Co. v. Thoroughman, 227 Ky. 35, 11 S. W. (2d) 1006, a contract almost identical in terms to the contract here involved was entered into by the W. T. Rawleigh Company and Roy Applegate, as principal, and E. C. Thoroughman and F. A. Applegate, as sureties. The W. T. Rawleigh Company sued the principal and sureties to recover a balance of $680 due it on sales of merchandise made to the principal. The contract in that case contained a provision similar to the one quoted above, and the sureties defended on the ground that without their knowledge or consent the plaintiff, through its guide books and other literature sent to Roy Applegate, advised, directed, and commanded him to sell goods to insolvent parties and to place goods on trial with persons who did not wish to buy. The buyer's contract formed a part of the contract signed by the sureties as it does here, and it was held that the advice contained in the guide book sent to the buyer was insufficient to excuse the obligation of the sureties. It follows, from what has been said, that the court erred in overruling appellants' motion for a directed verdict in their favor.

Wherefore, the motion for an appeal is sustained, the judgment is reversed, and the cause remanded for proceedings consistent herewith.