[No. 30344.   Department Two.   January 8, 1948.]

DEEMS TAYLOR *et al., Respondents,* v. THE STATE OF WASH-
INGTON *et al., Defendants,* WASHINGTON STATE RES-
TAURANT ASSOCIATION, INC., *et al., Appellants.*[1]

[1] Reported in 188 P. (2d) 671.

*Dalton, Taylor & Dalton,* for appellants Washington State Restaurant Association, Inc., *et al.*

*Bogle, Bogle & Gates, Robert W. Graham,* and *J. Tyler Hull,* for appellants Independent Theatre Owners of Washington, Northern Idaho and Alaska *et al.*

*McMicken, Rupp & Schweppe, Schwartz & Frohlich,* and *Thomas L. O'Leary,* for respondents.

MALLERY, C. J.—The plaintiffs brought this action seeking

a declaratory judgment under the provisions of Rem. Rev. Stat. (Sup.), § 784-1 [P.P.C. § 65-1], which provides, among other things, that:

"Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . ."

The prayer of their complaint was as follows:

"For a declaratory judgment of this court adjudging and decreeing that they, the said plaintiffs, and the American Society of Composers, Authors and Publishers, has and have so fully, completely, adequately and substantially complied with the terms, provisions and requirements of Chapter 218 of the Session Laws of 1937, as to authorize, permit and empower the said plaintiffs, and the American Society of Composers, Authors and Publishers, to issue licenses in the State of Washington for all purposes in the foregoing complaint referred to and to do all things forbidden or prohibited in and by said law to those who have failed to comply therewith."

From a judgment granting the plaintiffs' prayer, the defendants who were made parties defendant in the plaintiffs' original complaint have appealed.

Generally speaking, chapter 218, p. 1070, of the Session Laws of 1937, Rem. Rev. Stat. (Sup.), § 3802-1 [P.P.C. § 439-1] *et seq.*, requires that an organization such as the American Society of Composers, Authors and Publishers, hereafter referred to as ASCAP, must file a list or catalogue of its repertory with the secretary of state and the state treasurer, consisting of the musical compositions for which its members have copyrights, before it is eligible to do business in this state by way of licensing the citizens thereof to perform those copyrighted compositions publicly for profit.

As stated by the respondents in their brief with regard to the purpose of the action and the issues tried out therein:

"It is only to have declared whether the respondents have or have not made certain filings in conformity with a certain state law."

■■ The appellants challenge the right of the respondents to maintain this action upon the ground that they are

not eligible to do business in this state, because they did not meet the requirements of foreign corporations as provided by law. The declaratory judgment they sought was intended to establish their compliance with a special statute, which in this case is preliminary to their right to go on and do such other things under general law as are necessary to permit them to do business in this state. The bringing of their action is not in itself doing business in this state. See *Procter & Gamble Co. v. King County,* 9 Wn. (2d) 655, 115 P. (2d) 962. In such an action as this for a declaratory judgment as to their status only, many questions cannot be raised which might very well arise in subsequent actions between these parties or others in which other remedies under different issues are sought. Here the only question is: Have the respondents "made certain filings in conformity with a certain state law?" Appellants' contention is without merit.

The respondents contend that there is a presumption of law that they have complied with the provisions of the statutes in question. We think there is no such presumption in the situation here, where they have come into court seeking a declaratory judgment as to their status with the purpose of relying on such a judgment if the future need arises. Since they seek here to have the court say that they have complied with the law, the burden is upon them to produce evidence to support such a judgment. We will not base such a declaratory judgment on a presumption.

The appellants did not put in any testimony, and, in seeking a reversal, assert the insufficiency of the respondents' case to support the judgment. In this situation, the respondents have moved to strike the brief of some of the appellants because no formal statement of questions raised in their appeal was set out and designated as such in their briefs.

We think the respondents' statement of the sole question presented to the court as quoted above is accurate and sufficient. The appellants treated that question throughout their brief amply and with clarity. They made their assignments of error specifically, as required. In this situation, *Dill v.*

*Zielke,* 26 Wn. (2d) 246, 173 P. (2d) 977, applies. These contentions can avail respondents nothing. The striking of appellants' brief would be without significance.

■ Respondents have asked the court to put *its* stamp of approval on their purported compliance with a special statute. Even had there been no appearance by the appellants in the court below, a default declaratory judgment could not have been secured without offering sufficient evidence to support it.

The narrowness of the issues in question here also eliminates the contentions of some of the appellants which are based upon the assertions that the respondents have been adjudicated in the past to have acted in violation of the Federal anti-trust laws. What they have done in the past or what they may do in the future, is not here in issue. We are concerned only with whether they are entitled to the declaratory judgment entered below. To determine that issue, we now come to an examination of the sufficiency of the evidence to support it.

In a discussion of this case on its merits, both state and Federal laws should be mentioned.

■ Among the rights conferred under the Federal copyright laws is the exclusive right of the copyright holder to the public performance for profit of the copyrighted composition. This right has nothing to do with the exclusive right of publication and sale of sheet music or mechanical recordings of all kinds. The purchase of sheet music or recordings does not carry with it the right to publicly perform the copyrighted compositions for profit. We are concerned here only with the rights to the public performance for profit of copyrighted musical compositions.

In the past, notwithstanding that the copyright holder had the exclusive right to the public performance for profit of his copyrighted compositions and had the right to license for remuneration their performance publicly for profit by others, still the copyright holders had no practical way of enforcing their rights. Most musical compositions require but a few minutes for their performance, and it was im-

possible for the individual copyright holders to be aware of the innumerable isolated public performances of their compositions for profit over a vast territory.

In 1914, Victor Herbert organized the American Society of Composers, Authors and Publishers. It is a voluntary association functioning under the laws of the state of New York. It is in the nature of a co-operative and has for its purpose the collection of royalties or license fees for the public performance for profit of the copyrighted music belonging to its members. Its present membership comprises some nineteen hundred authors and composers, and two hundred publishing houses. Its mode of operation is that the members confer the power and right upon ASCAP to license and collect the remuneration for the public performance for profit of their copyrighted compositions. Thus the repertory of ASCAP is the combined copyrighted compositions of its members. The particular arrangement fixing the returns to be received by the members from ASCAP is very complicated and of no legal significance in the instant case. It should be added that the members at the present time do not confer the exclusive power over their individual copyrighted compositions to ASCAP but may, under certain conditions, act for themselves individually.

The total amounts collected from users and distributed by ASCAP to its members are without legal significance in the instant case, but we may mention in passing that they are not oppressive or unconscionable.

Subsequent to the formation of ASCAP, a number of states passed laws touching the operations of such organizations therein, and the state of Washington did so in 1937 by enacting chapter 218 of the laws of that year, which by its terms prohibited an organization such as ASCAP from doing business in this state unless it first filed a list of its copyrights and supplied certain supporting data as to each music title. The purpose of this requirement is set out in Rem. Rev. Stat. (Sup.), § 3802-4 [P.P.C. § 439-7], the pertinent part of which is as follows:

"The foregoing list of names and titles, provided for in the preceding section, shall be made available by the secretary

of state to all persons for examination, *in order that any user of copyrighted* works in this state *may know the rights and the titles* to such copyrighted works *as may be claimed* by *any of said combinations,* pools, associations, or persons as aforesaid; *said lists shall be prepared so that all persons may avoid using said copyrighted* compositions, *if they so desire,* and may avoid conflict therewith, and avoid committing innocent infringements of said works; . . . " (Italics ours.)

Thus ASCAP is required to file a list of its copyrights (being those owned by its members) in order that all persons can avoid using them by confining themselves to music not included in the list. All persons examining the filed list of copyrights also have the right to find by what "rights and titles" ASCAP claims the copyrights it includes therein. The data which ASCAP is required to supply in its filed list of copyrights are prescribed in Rem. Rev. Stat. (Sup.), § 3802-3 [P.P.C. § 439-5], which provides, among other things, as follows:

"In the event two or more persons holding separate copyrighted musical works, or any rights flowing therefrom, whether by assignment, agency agreements, or by any form of agreement, pool their interests, or combine, or conspire, federate, or join together in any way, whether for a lawful purpose or otherwise, a complete list of their copyrighted works or compositions shall be filed once each year in the office of the secretary of state of the State of Washington, together with a list of the prices charged or demanded for their various copyrighted works; no payment or filing fee shall be required by the secretary of state, and said persons, corporations, or association, foreign or domestic shall state therein under oath, that said list is a complete catalogue of the titles of their claimed compositions, whether musical or dramatic or of any other classification, and in addition to stating the name and title of the copyrighted work it shall recite therein the date each separate work was copyrighted, and the name of the author, the date of its assignment, if any, or the date of the assignment of any interest therein, if any, and the name of the publisher, the name of the present owner, together with the addresses and residences of all parties who have at any time had any interest in such copyrighted work. The secretary of state shall require two copies of said list, one of which he shall keep on file, the

other shall be forwarded to the office of the state treasurer at Olympia."

In other words:

"In order that any user of copyrighted works in this state may know the rights and the titles to such copyrighted works as may be claimed" by ASCAP, and "so that all persons may avoid using said copyrighted compositions, if they so desire," (1) "a complete list of their copyrighted works or compositions shall be filed once each year in the office of the secretary of state," (2) together with a list of the prices charged or demanded for their various copyrighted works. (3) This list "shall recite therein the date each separate work was copyrighted," (4) shall contain "the name of the author," (5) the list of the copyrighted work shall show "the date of its assignment, if any," or (6) "the date of the assignment of any interest therein, if any," (7) "the name of the publisher," (8) "the name of the present owner, together with" (9) "the addresses and residences of all parties who have at any time had any interest in such copyrighted works." (Quotations from the statute.)

We now turn to the evidence in the case to determine if ASCAP has filed its list of copyrights in conformity with the statute.

The respondents caused the deputy secretary of state to draw sixty cards at random from ASCAP's filed list. A photostatic copy of these cards was introduced in evidence as plaintiffs' exhibit No. 35. Since there are about eighty thousand musical compositions contained in the filed list, this is a small sample, but we take the exhibit and the evidence as we find it and will treat each of the sixty cards as representing its proportion of similar cards in the filed list. We set out and comment on only ten of them.

The first card in the exhibit contains only the following words:

Title: "Abide With Me" Comp. W. H. Monk Auth. H. L. Lyte

Pub: Robbins Music Corp. (ASCAP) Copyright . . .

As to this claim of right on the part of ASCAP to license

the public performance for profit of the song, "Abide With Me," it may be pointed out that "Abide With Me" has long since entered the public domain and is a part of the cultural heritage of all English speaking peoples. The composer, W. H. Monk, and the author, H. L. Lyte, are not members of ASCAP. The date of the copyright is not given as required by the law for the obvious reason that it is now in the public domain.

■ The copyright laws confer upon the copyright holder the exclusive right of public performance for profit for a period of twenty-eight years. Certain persons under particular conditions may renew their copyrights for an additional period of twenty-eight years; many, but not all, persons having the right do renew them. In no event can any copyright survive after the elapse of fifty-six years. All copyrighted compositions enter the public domain at the expiration of the copyrights, and thereafter every person has the right to use them freely. All musical compositions extant fall either in the public domain or in the copyrighted field. Every year, numerous new compositions enter the copyright field. Likewise, every year numerous compositions enter the public domain by copyright expiration. Such is the case with "Abide With Me."

The second card of those drawn is as follows:

Title: "Ay! Ay! Ay!" Comp.: Argentine Cowboy Song (Arr: Clyde Trask) Publ: R. L. Huntzinger, Inc. (ASCAP)

Copyright: 1934.

As to this title, we find from consulting the exhibits that the arranger, Clyde Trask, is not a member of ASCAP. It is true there is a notation "Copyright, 1934," but we do not have any idea whatever from the information on this card as to who the present copyright owner is. For all we know, only the arrangement may be copyrighted, and this title itself may also be in the public domain.

The fourteenth card on the list is as follows:

Title: "Etude" (Op. 25 No. 7 in C Sharp MINOR) Comp: F. Chopin

Publ: G. Schirmer, Inc. (ASCAP) Copyright: ....................

As to this card, little need be said. This musical work, being in the public domain, belongs to all the people. ASCAP has no right to appropriate it to its own use.

The twenty-seventh card in the exhibit is as follows:

Title: "Improving Songs For Anxious Children" Comp: John A Carpenter Auth: Rue Carpenter Publ: G. Schirmer, Inc. (ASCAP) Copyright: 1913.

This card, on the face, shows that this composition is in the public domain unless the copyright was renewed. If ASCAP claims under a renewal, it should say so. From the card, ASCAP has shown no right or title to this claim.

The twenty-ninth card is as follows:

Title: "It Does Amuse Me So" (The Toreador) Comp: Lionel Monckton, Ivan Caryll Auth: Percy Greenbank Publ: Chappell & Co., Inc. (ASCAP) Copyright: 1901.

The same comment applies as made in the preceding card, and it may be added that the composers and author are not members of ASCAP.

Card thirty-one is as follows:

Title: "Jamais, The Tricky Little Maid" (The Wife Tamers) Comp: Robert Hood Bowers Auth: James Clarence Harvey Publ: Remick Music Corp. (ASCAP) Copyright: 1910.

This title on the face of the card shows it is in the public domain.

Card thirty-nine shows as follows:

Title: "Minuet" (In G) Comp: L. Van Beethoven Publ: Ditson Co., Inc. (ASCAP)

It may be shocking to the music lovers of America to learn that ASCAP is asserting a right to royalties for the public performance for profit of this composition.

Card forty-four shows as follows:

Title: "Nine Penny Fiddle" Comp: Old Irish Melody Publ: G. Schirmer, Inc. (ASCAP)

From the face of this card, this title is obviously in the public domain.

Card forty-nine shows as follows:

Title: "Pal Like You (A)" Comp: Jerome Kern Publ: Harms, Inc. (ASCAP) Copyright: 1917.

1917 copyrights have expired. This composition is in the public domain, so far as the face of this card shows.

Card sixty shows as follows:

Title: "Smilin' Thru" Comp: Arthur Penn Publ: M. Witmark & Sons (ASCAP) Copyright: 1918.

The same comment applies to this composition as to the preceding one.

Other cards in this exhibit have defects of lesser importance than these which we have been pointing out. Upon a percentage basis, the cards in this exhibit which we have discussed indicate that more than thirteen thousand titles are wrongfully claimed by ASCAP as its property which are in fact in the public domain.

In connection with the question of the public domain, ASCAP makes another fatal omission in its purported compliance with the statute. It refiles the same list from year to year but does not delete the titles that have meanwhile entered the public domain by copyright expiration. The music in the public domain is the cultural heritage of the people. Every one has the right to a free and unlimited use of it. ASCAP has no right to receive pay for its public performance for profit. The inclusion of titles in the public domain in ASCAP's filed list is notice to the public that it claims a right to collect remuneration from those who so perform them. Their inclusion cannot be considered as surplusage, because under the statute the method by which one determines that ASCAP does not own a certain title is from its absence from the filed list. From this, one knows that the title is either in the public domain or belongs to some one else. A successful encroachment upon the public domain constitutes a public injury which the statute was intended to prevent.

When the cards of the exhibit herein set out are measured by the requirements of the statute, other deficiencies in compliance are apparent. The defects heretofore discussed relating to the public domain are too conclusive to need further supporting details of noncompliance.

■ ASCAP has not complied with the statute and has not attempted to do so in good faith, in view of its encroachment on the public domain. It is not entitled to a declaratory judgment that it has done so.

The declaratory judgment is reversed.

BEALS, STEINERT, ROBINSON, and JEFFERS, JJ., concur.

---

April 2, 1948. Petition for rehearing denied.