[No. 28385.   Department Two.   August 5, 1941.]

THE PROCTER & GAMBLE COMPANY, *Respondent*, v.
KING COUNTY, *Appellant*.[1]

[1]Reported in 115 P. (2d) 962.

*B. Gray Warner* and *Lloyd W. Shorett,* for appellant.

*Donworth, Paul & Donworth,* for respondent.

MILLARD, J.—This action was brought to recover taxes paid under protest on herring oil held in storage January 1, 1939, at the East Waterway dock and warehouse in the city of Seattle. All of plaintiff's herring oil, which had been shipped from Alaska, was shipped outside of the state of Washington within six months after its arrival in Seattle except a certain quantity which is not involved in this case. The last date on which the last lot of oil was shipped from the warehouse in Seattle, was March 4, 1939.

Plaintiff alleged that it was a foreign corporation, which is not disputed, and that it had no place of business within this state, "and has never conducted any business therein." Defendant in its answer denied, for lack of information, the allegation that plaintiff was not doing business within this state.

The cause was tried to the court, which found that plaintiff has not now, and never has had, any place of business within this state and has never conducted any business therein. The court further found that all of plaintiff's herring oil, which had been in the ware-

house in Seattle less than six months at the time it was shipped out of this state, was exempt from taxation under Laws of 1937, chapter 58, p. 201. From those findings, the court concluded that plaintiff was entitled to recovery claimed. Judgment was entered accordingly. Defendant appealed.

On the date, January 1, 1939, the herring oil was assessed, the effective statute was Laws of 1937, chapter 58, which provided:

Sec. 2, p. 201. "All grains and orchard products while being transported to or held in storage in a grain warehouse and all fish and fish products while being transported to or held in storage in a storage warehouse, awaiting transportation to points without the state, shall be considered and held to be property in transit and nontaxable: *Provided,* That this provision shall not apply after such grains and fish or fish products have been stored for a period of six months after their entry into such warehouses."

All of respondent's herring oil was shipped from Alaska and was, on January 1, 1939, in storage at East Waterway dock and warehouse in Seattle. Within six months after its arrival, all of that oil material to this action was shipped out of the state. On March 10, 1939, which was six days subsequent to the shipment of the last lot from the warehouse in Seattle, Laws of 1939, chapter 67, p. 189 (Rem. Rev. Stat. (Sup.), § 11130-4 [P. C. § 6882-7p] *et seq.*), became effective. The 1939 statute repealed Laws of 1937, chapter 58, but preserved all rights accruing under the repealed act. Section 5 of the 1939 statute, p. 190, reads as follows:

"Chapter 58, Laws of 1937, being sections 11130-1 to 11130-3 Remington's Revised Statutes, is hereby repealed, but this act shall not have the effect of terminating or modifying any rights accruing before the passage of this act." Rem. Rev. Stat. (Sup.), § 11130-8 [P. C. § 6882-7t].

Counsel for appellant concede that if respondent did no business within this state, either through itself or by an agent or subsidiary, that it would be entitled to maintain an action in the courts of this state. The statute (Rem. Rev. Stat. (Sup.), §§ 3836-2, 3836-12 [P. C. §§ 4656-52, 4656-62], Laws of 1937, chapter 70, pp. 239, 245, §§ 2, 12) provides that foreign corporations doing an intrastate business in this state shall qualify so to do in the manner prescribed in that statute, and shall pay for the privilege of so doing certain license fees; and that no corporation shall be permitted to commence or maintain any proceeding in any court of this state without alleging and proving that it has paid or contracted to pay all fees due this state under existing law.

In *Rawleigh Co. v. Harper*, 173 Wash. 233, 22 P. (2d) 665, we held that, where a foreign corporation is engaged solely in interstate commerce, the institution of an action to recover an indebtedness does not constitute doing business in the state.

However, argue counsel for appellant, the denial of respondent's allegation that it did no business within the state tendered the issue, and, unless respondent proved that allegation, it falls within the ban of the statute (Rem. Rev. Stat. (Sup.), § 3836-12) which requires the payment of license fees as a condition precedent to the right to maintain an action.

In other words, contend counsel for appellant, respondent may not maintain this action unless it affirmatively proves that it is not doing business in this state, and the testimony of the sales manager of a distributing company, which respondent claimed was entirely independent of respondent, fell far short of proving respondent's allegation that it was not doing business within this state.

We have consistently held that statutes provid-

ing that no corporation shall commence any action in this state without alleging and proving that it has paid its annual license fee, refer only to corporations doing business within this state, and do not apply to a non-resident corporation simply bringing an action in this state, as that does not constitute doing business within this state. *Lilly-Brackett Co. v. Sonnemann,* 50 Wash. 487, 97 Pac. 505; *Smith & Co. v. Dickinson,* 81 Wash. 465, 142 Pac. 1133.

There is no presumption that, because a foreign corporation commences an action in the courts of this state for the recovery of taxes levied upon its property which the legislature has declared "shall be considered and held to be property in transit and non-taxable," it is doing business within this state. The burden to show the necessity for payment of license fee in such a case is upon the defendant. We have never held that a foreign corporation must prove that it is not doing business within this state in order to maintain an action in the state courts, except in those cases where it appeared either from the complaint or the answer (supported by competent proof) that the plaintiff was doing business within this state.

Appellant county may set up as an affirmative defense in its answer, and offer evidence in support thereof, that respondent foreign corporation is actually doing business within this state without paying a license fee which is a condition precedent to the maintenance of the action. Otherwise, a foreign corporation whose property was unlawfully taxed while in transit in interstate commerce would be required to prove a negative proposition—that it is not doing business within the state—in order to recover the unlawfully exacted tax.

■ Ordinarily, one is bound by the allegations of his pleading. Generally, however, a plaintiff is re-

quired to allege only facts constituting, *prima facie*, a cause of action and need not anticipate or negative defenses. Allegations are not required of a plaintiff in anticipation of matters of defense, or to negative the existence of defensive matters, but, if pleaded, such allegations should be treated as surplusage and disregarded.

■ The burden of proof was not imposed upon the respondent, although its complaint negatived an exception exempting it from payment of certain fees as a condition precedent to maintenance of the action, as such an allegation was unnecessary on respondent's part and it was under no duty to establish it by evidence.

Respondent alleged that it was a foreign corporation, which appellant admitted. While, unnecessarily, respondent alleged that it was not engaged in business within this state, that allegation of a negative, which was a matter of defense, did not impose upon respondent the burden of proving that it was not engaged in business within this state. Appellant did not deny that allegation, nor did appellant allege or attempt to prove that respondent was doing business within this state. On that record, conceding the contention of appellant that the evidence adduced by respondent failed to prove that respondent was not engaged in business within this state, the finding of the trial court that respondent was not doing business within this state cannot be disturbed.

■ Neither is there any evidence that respondent is doing business within this state through a subsidiary. We may disregard the testimony of the Seattle sales manager of Procter & Gamble Distributing Company, called as a witness by respondent. He testified that he was a stockholder of respondent corporation, an employee of the distributing company, not respondent,

for more than ten years, and that respondent did no business in this state and did not have an office or agents in this state.

There is no evidence as to the relationship between respondent and the distributing company other than that the latter sells products manufactured by the former. No effort was made to prove when title to such products passes from respondent to the distributing company, nor was any evidence offered as to the stock ownership of one corporation by the other, or any control exercised by one over the other. All that the record discloses is that one company buys the products of another corporation and resells them to consumers; that does not constitute the buyer the agent of the seller. There is an utter lack of evidence from which it could be reasonably inferred that the distributing company is the agent of respondent. No presumption prevails that, because one corporation sells the products of another corporation, the former is the agent of the latter.

Counsel for appellant next contend that Laws of 1939, chapter 67, which repeal Laws of 1937, chapter 58, took away the exemption from taxation granted by § 2 of the 1937 statute. That section of the 1937 statute provides that fish products, while being transported to or held in storage in a storage warehouse awaiting transportation to points without the state, shall be considered and held to be property in transit and nontaxable, if not in storage longer than six months.

All of the herring oil involved in the case at bar was shipped out of storage six days prior to the date Laws of 1939, chapter 67, became effective. Under Laws of 1939, chapter 67, p. 190, § 5, it was provided:

"Chapter 58, Laws of 1937, being sections 11130-1 to 11130-3 Remington's Revised Statutes, is hereby repealed, but this act shall not have the effect of ter-

minating or modifying any rights accruing before the passage of this act."

Section 8 of chapter 67, Laws of 1939, p. 191, reads as follows:

"This act shall apply to the assessment of property for taxation for the year 1939 and subsequent years. It is necessary for the immediate preservation and support of the state government and its existing public institutions and shall take effect immediately." Rem. Rev. Stat. (Sup.), § 11130-11 [P. C. § 6882-7w].

Section 3, chapter 67, Laws of 1939, p. 190, reads as follows:

"The county assessor shall list and assess all such grains and flour, fruit and fruit products, vegetables and vegetable products, and fish and fish products as of January 1st of each year, without regard to any average inventory; but shall cancel any such assessment in whole or in proportionate part upon receipt of sufficient documentary proof that the property so assessed was actually shipped to points outside the state on or before April 30th of such year: *Provided,* That no such cancellation shall be made unless such proof be furnished to the county assessor before June 1st of such year: *Provided further,* That any such assessment of grain shall also be subject to cancellation as provided in this act if sufficient documentary proof be so furnished that the grain so assessed was milled into flour and such flour was actually shipped to points outside the state on or before April 30th of such year." Rem. Rev. Stat. (Sup.), § 11130-6 [P. C. § 6882-7r].

It is argued by counsel for appellant that the provision in § 5 preserving rights which had accrued before passage of the act applies only to the 1937 and 1938 assessments, since, under the express terms of § 8, the act applies to assessments made for the year 1939; that, if mistaken in this view, it then is contended that § 8 is controlling since it is last in position.

When it is necessary to construe a statute, all

the rules should be considered, and no particular rule should be followed to the exclusion of all others when to do so would lead to illogical conclusions. 59 C. J. 944, § 563.

"Since all statutes must be interpreted before they can be applied, might not the rule be announced that all statutes are subject to construction, and if there be more than one possible construction, that meaning will be adopted which most reasonably seems to be the one intended by the legislature, after the court has considered all intrinsic and extrinsic aids? Since in practice this largely represents the method actually pursued by the court in its search for the legislative intent, there should be no real objection to recognizing that which already is a reality." Crawford Statutory Construction, 283, § 175.

As applied to the herring oil, which is the subject matter of this controversy, respondent's right of exemption had accrued six days before the repeal of the 1937 statute became effective. Section 5 of chapter 67 of the Laws of 1939 clearly manifests the intent of the legislature not to terminate or modify any right of exemption which had accrued prior to the passage of the 1939 statute. Such rights are specifically preserved. Of the 3,014 tons of respondent's herring oil, approximately 2,744 tons had been shipped out within six months after their entry into the warehouse. It follows that the right of exemption from taxation of 2,744 tons of oil became fixed under the 1937 statute six days prior to its repeal.

As to the remainder (in excess of one-half million pounds) of oil which is not involved in this case, the saving clause in § 5, chapter 67, Laws of 1939, has no application. No right of exemption had accrued to this half million pounds of oil, because it was not shipped out of storage until four days after the six months' period expired.

Sections 5 and 8 of the 1939 statute are not inconsistent. Section 5 continues in effect the exemption granted by § 2, chapter 58, Laws of 1937, as to fish products which had been shipped out of storage after January 1, 1939, and before March 10, 1939, the date chapter 67, Laws of 1939, repealing Laws of 1937, chapter 58, became effective, provided such products had remained in storage less than six months. Section 8 of the 1939 statute requires that, as to all other fish products in storage on January, 1939, exemption shall be granted only on condition that the products be actually shipped outside the state before April 30th, and on the further condition that sufficient documentary proof of that fact be furnished to the county assessor prior to June 1st. The legislature was changing its policy as to fish products not already exempt under the 1937 act by permitting exemption of such products if shipped out of storage before April 30th, regardless of the length of time the fish products had been in storage. The six months' storage period was abolished as a basis of exemption for all fish products that had not already earned their exemption under § 2, chapter 58, Laws of 1937.

It would be a forced construction to hold that the legislature preserved the exemption to those that had earned it by specifically so providing in § 5, chapter 67, Laws of 1939, and, then immediately, by § 8 of the same act, take the exemption away by the language "This act shall apply to the assessment of property for taxation for the year 1939." By definite language in § 5 of the 1939 statute, the legislature made its intent clear that the repeal of the 1937 statute did not terminate or modify any rights accorded under the 1937 statute before the 1939 statute took effect March 10, 1939. If the legislature had intended such a result as

that for which appellant contends, it certainly would have omitted from § 5 of the 1939 statute the language that that act was not to have the effect of terminating or modifying any rights accorded before the passage of the 1939 statute.

Since respondent's right of exemption under the 1937 statute accrued prior to the passage of the 1939 statute, and as respondent's rights were specifically preserved by § 5 of the 1939 statute, respondent was not required by the 1939 statute (Laws of 1939, chapter 67, § 3) to furnish proof that the subject matter of this controversy was actually shipped to points outside of this state on or before April 30, 1939. Respondent's rights had accrued under the 1937 statute and were not modified or terminated by the repeal of that statute.

The judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.