[No. 34892. Department Two. July 9, 1959.]

HOWARD BUNN et al., Respondents, v. WILLIAM J. WALCH et al., Defendants, ART PAYNE, Appellant.[1]

[1]Reported in 342 P. (2d) 211.

458

*D. J. Cunningham,* for appellant.

*Everel Carson,* for respondents.

HILL, J.—This appeal questions the liability of an auctioneer who, with knowledge that personal property was subject to a chattel mortgage duly filed for record, sold the personal property without the express consent of the mortgagees, but with their acquiescence, and paid the proceeds of the sale to the mortgagors.

The plaintiffs at one time operated a dairy farm in Grays Harbor county. They sold their dairy cattle and farm equipment to Mr. and Mrs. William J. Walch, who financed the purchase by giving a first mortgage on the property to the First National Bank of Montesano and a second mortgage (securing a note for $5,200) to the plaintiffs. The plaintiffs then moved to Clark county.

One year and one month later the Walches (the mortgagors) held a closing-out sale at which all the livestock and machinery covered by these mortgages were offered for sale at auction. Art Payne, the appellant here, was engaged by them as auctioneer. This sale was approved by the bank which held the first mortgage, but no attempt was made to secure the consent of the plaintiffs, as second mortgagees. No attempt was made by the mortgagors or the auctioneer to notify them of the sale, and they learned of it only by chance, but in time to be present at the sale.

The auction was well advertised and well attended. The total proceeds of the sale were $8,347.15, apparently its fair market value. The auctioneer took his five per cent commisson of $417.34, and the remainder of $7,929.80 was paid over to the mortgagors as the net proceeds of the sale. They used part of the proceeds to pay the amount secured by the bank's first mortgage, after which there was $4,230.36 remaining. Nothing, however, was paid to the plaintiffs on their note secured by the second mortgage.

This action was brought by the plaintiffs against the Walches, the purchasers at the auction sale, and the auctioneer.

Judgment was rendered by the trial court in favor of the plaintiffs against the mortgagors on their promissory note in the amount of $5,200, together with interest and attorney's fees. The mortgagors have not appealed.

The trial court dismissed the action against the purchasers, but gave the plaintiffs a judgment against the auctioneer, on the theory of conversion, in the sum of $4,230.36, and gave him a judgment over against the mortgagors for any sum paid on the judgment against him. This appeal is only from the judgment against the auctioneer.

There is seemingly no question but that the mortgagors have converted to their own uses $4,230.36 of the proceeds of the sale, which should have been applied on the note secured by the second mortgage. There is likewise no question but that the auctioneer was the agent of the mortgagors in conducting the sale, collecting the proceeds

thereof, and that his delivery of the net proceeds to the mortgagors made it possible for them to convert those proceeds to their own uses. The auctioneer admittedly had actual knowledge of the plaintiffs' second mortgage, but disregarded their interests.

Under the case authorities an auctioneer selling mortgaged personal property, without the knowledge or consent of the mortgagee, would be liable for the conversion of the mortgaged property, if he had either actual or constructive notice of the mortgagee's interest therein.

*United States v. Matthews* (1957), 244 F. (2d) 626; *United States v. Butt* (1953), 203 F. (2d) 643; *Mason City Production Credit Ass'n v. Sig Ellingson & Co.* (1939), 205 Minn. 537, 286 N. W. 713; *The First National Bank v. Siman* (1937), 65 S. D. 514, 275 N. W. 347; *Citizens State Bank of Dalhart v. Farmers Union Livestock Cooperative Co.* (1948), 165 Kan. 96, 193 P. (2d) 636; *Moderie v. Schmidt* (1940), 6 Wn. (2d) 592, 108 P. (2d) 331; *Birmingham v. Rice Bros.* (1947), 238 Iowa 410, 26 N. W. (2d) 39, 2 A. L. R. (2d) 1108. 2 Jones, Chattel Mortgages and Conditional Sales (6th ed. 1933), § 460.

The first five of the cited cases deal with the right of a mortgagee to hold an auctioneer, a factor, or a commission merchant for the conversion of mortgaged property; and the latter two, while not mortgagee cases, are pertinent as to the obligations and liabilities of auctioneers, factors, commission merchants, etc.

In the *Matthews* case, the United States (one of whose credit agencies was the mortgagee of certain livestock) was the owner of the mortgage and brought an action against an auctioneer for the reasonable market value of the livestock he had sold without the consent of the mortgagee and without actual knowledge that there was a mortgage. The district court gave a judgment, limited to the amount of the auctioneer's retained commissions. The United States appealed, and the 9th circuit court of appeals directed the entry of a judgment against the auctioneer for the full market value of the mortgaged livestock, less

any amount that the mortgagor or the auctioneer may have refunded to the United States out of the proceeds of the sale.

The circuit court, in its opinion, recognized the existence of a different rule in Tennessee and Kentucky if the auctioneer does not have actual knowledge of the mortgage (*Frizzell v. Rundle & Co.* (1890), 88 Tenn. 396, 12 S. W. 918, 17 Am. Stat. 908), but points out that the great weight of authority supports the proposition that a mortgagee who has suffered a loss may maintain an action against a person who has wrongfully converted to his own use property included in the mortgage if it has been duly filed for record, and that the factor or auctioneer, even though innocent, is liable if he assists in such a conversion, because he stands in the shoes of his principal. The liability of both principal and factor is based not upon contract but upon tort.

In the same opinion there is a quotation from 2 Jones, Chattel Mortgages and Conditional Sales (6th ed. 1933), § 460, p. 230, which is, in part,

" . . . If a mortgagor, for the purpose of defrauding the mortgagee, sends the mortgaged goods to an auctioneer, by whom they are sold, and the proceeds paid over to the mortgagor, the mortgagee may maintain trover for the goods against the auctioneer, although the latter did not participate in the fraud, and had no knowledge of the existence of the mortgage. . . .

"A commission merchant is under the same liability in this respect as an auctioneer. Although he sells mortgaged property without any notice of a duly recorded mortgage, he is liable in tort for conversion to the mortgagee."

Our own case of *Moderie v. Schmidt, supra,* is quoted from extensively and relied upon as apposite authority in the *Matthews* case.

In the *Mason City Production Credit Ass'n* case, *supra,* M. O. McCoy mortgaged one hundred thirteen steers, then on his farm in Winnebago county, Iowa, to the credit association, which mortgage was duly filed for record in that county. McCoy thereafter shipped twenty-one of the steers to the defendant Ellingson, a livestock-commission mer-

chant at South St. Paul, who thereafter sold the steers as McCoy's agent. A judgment by the credit association against Ellingson for the conversion of the twenty-one steers was affirmed.

In *The First National Bank v. Siman, supra,* one Harms gave a mortgage on sheep in Moody county, South Dakota, to The First National Bank of Pipestone, which mortgage was duly filed in that county. Harms thereafter transported the sheep to Sioux City, Iowa, and delivered them to Siman, a commission merchant, who sold them for Harms; and, after making deductions for yardage, insurance, commission, and trucking, Siman paid the balance to Harms. Siman had no knowledge of the mortgage and believed Harms had a lawful right to sell the sheep. The bank brought an action for wrongful conversion against Siman and recovered. The supreme court of South Dakota affirmed the judgment.

In *Birmingham v. Rice Bros., supra,* there is a quotation from *Mau v. Rice Bros.* (1933), 216 Iowa 864, 249 N. W. 206, as follows:

"In other jurisdictions the courts are almost a unit in holding that a broker, factor, or commission merchant cannot escape liability for the wrongful sale of property by reason of their agency relationship. 25 C.J. 411, section 143; 20 A.L.R. 132. The fact that the defendant's profit from the transaction was small is immaterial, because it is not necessary that profit flow to the party guilty of the conversion to create liability for the conversion. . . ."

The next paragraph of the *Birmingham* opinion then gives a clear statement of the basis of the auctioneer's liability (p. 414),

"This rule is merely an application of the rule of liability ordinarily applicable to agents. 2 Am. Jur., Agency, section 328; 3 C.J.S., Agency, section 221d. The factor, even though innocent, is liable if he assists in such conversion, because he stands in the shoes of his principal. The liability of both principal and factor is based not upon contract but upon tort."

There are, however, special circumstances in the present case which defeat the plaintiffs' recovery against

the auctioneer. The cause of action being in tort, it is a valid defense if the plaintiffs are shown to have consented to those acts for which they now seek to recover. Such consent may be shown from implication arising from a course of conduct as well as by express words. *Farmers' Nat. Bank v. Missouri Livestock Comm. Co.* (1931), 53 F. (2d) 991, 996.

The plaintiffs were present throughout the whole auction. Soon after their arrival at the scene they talked with the mortgagors. They did not protest the sale; their main concern was how they were to realize their money. They kept a record of the prices received for each cow and for each piece of machinery. At the lunch-time intermission Mr. Howard Bunn introduced himself to the auctioneer as the second mortgagee and was told by the auctioneer that he should stop the sale "if it didn't look right." The plaintiffs, nevertheless, made no protest to the continuance of the sale and, during the afternoon session at which the livestock were sold, answered questions and volunteered information to the prospective purchasers concerning the various cows. They were admittedly anxious that the cows and equipment bring the best prices possible.

The plaintiffs, as respondents here, have not favored us with a brief and we find no exactly parallel situation in the cases. We reluctantly disagree with the trial court's conclusion that the sale of the mortgaged property by the auctioneer was a conversion of the property as far as the plaintiffs, as second mortgagees, were concerned. Their presence and cooperation in the auction was an acquiescence in the sale, which imports consent and which bars them from any recovery for conversion of the mortgaged property. Where a party knows what is occurring and would be expected to speak, if he wished to protect his interests, his acquiescence manifests his tacit consent. *Brooks v. Record* (1868), 47 Ill. 30; *Stockyards Nat. Bank of South Omaha v. B. Harris Wool Co.* (1926), 316 Mo. 426, 289 S. W. 623; 14 C. J. S., Chattel Mortgages, 878-79, § 262. See *DeBoe v. Prentice Packing & Storage Co.* (1933),

172 Wash. 514, 20 P. (2d) 1107; *Benedict v. Farlow* (1891), 1 Ind. App. 160, 27 N. E. 307.

■■ We should also note that the plaintiffs' actions at the auction led the trial court to conclude that they were estopped to assert their mortgage lien against the property in the hands of the various purchasers. As a consequence, these purchasers were dismissed as defendants in the trial court, from which dismissal the plaintiffs have not appealed. A mortgagee's action for conversion of mortgaged property is based upon a policy of protection of his security. *Spokane Security Finance Co. v. Crowley Lbr. Co.* (1929), 152 Wash. 697, 279 Pac. 103; *Bollen v. Wilson Creek Union Grain & Trading Co.* (1916), 90 Wash. 400, 156 Pac. 404. The plaintiffs having waived, by their conduct, their lien upon the property, it follows that they retained no interest therein which could be made the basis for an action in conversion.

The trial court rightly observed that their rights would have been clearer had they never heard of the sale; or had they heard of it, but remained away from it—for, under such circumstance, the auctioneer would have been liable for the conversion of the mortgaged property.

However, their acquiescence in the sale was clearly predicated upon what must have been obvious to the mortgagors and their agent the auctioneer, *i.e.*, that they expected the proceeds of the sale to be used to pay off both the first and second mortgages. The question then becomes whether the plaintiffs' lien was transferred to the proceeds in the hands of the auctioneer, which we will assume; and whether the auctioneer's payment of the net proceeds of the sale to the mortgagors constituted a conversion of that portion of the net proceeds ($4,230.36) which should have been applied upon payment of the second mortgage.

The record shows that the plaintiffs talked with Mr. W. W. Woods, the representative of the bank which held the first mortgage, at the auction. He told them that the mortgagors would receive the proceeds of the sale, which

would be deposited at the bank, and that the matter of paying off the mortgages would be handled through the bank. In reliance upon this arrangement, the plaintiffs then gave Mr. Woods the promissory note (which was secured by the second mortgage) for collection. The auctioneer at the conclusion of the sale did only what all parties intended that he do: he paid the net proceeds to the mortgagors. The plaintiffs, by voicing no objection to this arrangement and by handing over their note for collection by the bank in reliance on this arrangement, consented to the auctioneer's delivery of the net proceeds to the mortgagors.

We conclude that the plaintiffs, by their acquiescence and conduct, consented to the sale of the mortgaged property at the auction and, also, consented to the auctioneer's delivery of the net proceeds to the mortgagors. The mortgagors therefore came rightfully into possession of these net proceeds by the consent of all of the parties concerned.

Conceding that the mortgagors have betrayed the confidence which the plaintiffs had in them, and have converted to their use the $4,230.36, which should have been applied upon the second mortgage, the conversion occurred not when the auctioneer delivered the money to the mortgagors or when the mortgagors first received the funds from the auctioneer, but when they refused to pay them either to the plaintiffs or to the bank. See *Hanson v. Ostrander R. & Tbr. Co.* (1928), 147 Wash. 104, 265 Pac. 159; *Lockit Cap Co. v. Globe Mfg. Co.* (1930), 158 Wash. 183, 290 Pac. 813.

Had the plaintiffs been aware of their rights, or of the risks they were taking in allowing payment to be made to the mortgagors, they might have told the auctioneer "we don't want our share of the proceeds paid to the mortgagors, and we want you to hold the money or turn it over to the bank to await determination of the respective interests of the mortgagees." Under such facts a different question would be presented. In the case at bar, however,

it is clear that the plaintiffs as the mortgagees in the second mortgage impliedly consented to both the sale by the auctioneer and to his delivery of the proceeds of the sale to the mortgagors, and there has been no conversion for which he is responsible.

The judgment against the auctioneer, Art Payne, is reversed with instructions to dismiss the action as to him.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.

