[No. 9371–1–I.   Division One.   August 2, 1982.]

TOP LINE EQUIPMENT CO., *Respondent,* v. NATIONAL AUCTION SERVICE, INC., *Appellant.*

*William B. Christie,* for appellant.

*Alan L. Froelich,* for respondent.

CALLOW, J.—National Auction Service, Inc., a Washington corporation, appeals from a judgment entered in favor of Top Line Equipment Co., an Oregon corporation, following a trial to the court in Top Line's action for conversion of two forklift trucks. We affirm.

In 1973, Top Line leased two Clark forklift trucks to IRECO Industries of Eugene, Oregon. To protect its interest, Top Line filed U.C.C. financing statements with the Oregon Secretary of State and the county clerk in Eugene. In March 1977, IRECO hired National Auction Service to sell some of its equipment. The auction, held on the premises of IRECO in Eugene on April 21, 1977, included Top Line's two forklifts, which sold for $7,550. The trial court found that Top Line did not consent to the sale of its trucks and, indeed, was not aware of the auction. IRECO did not pay Top Line for the trucks before IRECO declared bankruptcy in April 1978.

National Auction Service was not aware of Top Line's interest in the trucks, having made no effort to determine whether the trucks were encumbered. The trial court found

that National Auction relied solely on the warranty of title in its auction service contract signed by IRECO's president. The trial court concluded that National Auction, as IRECO's agent, was liable for conversion of the trucks. Top Line received judgment against National Auction for the sale price.

## I
### CERTIFICATE OF AUTHORITY

First, National Auction argues that Top Line was precluded from maintaining this action because it did not plead and prove compliance with RCW 23A.32.190 or prove that it was exempt from its provisions. The statute provides in part:

> No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority.

RCW 23A.44.120 imposes a similar requirement on domestic corporations:

> No corporation shall be permitted to commence or maintain any suit, action, or proceeding in any court of this state, without alleging and proving that it has paid or contracted to pay as herein provided all fees and penalties due the state of Washington under existing law or this title.

Before the Washington business corporation act was enacted in 1965, the language in RCW 23A.44.120 governed *both* domestic and foreign corporations. *See* Laws of 1937, ch. 70, § 12, p. 245; Laws of 1907, ch. 140, § 7, p. 271. Several appellate decisions address the application of the former statutes, now RCW 23A.44.120, to foreign corporations, but until now, no case has been decided under the statute dealing exclusively with foreign corporations, RCW 23A.32.190.

The former statutes disqualified a foreign corporation from bringing suit in Washington only if it was "doing business" in this state without having paid its fees.

A nonresident corporation, which is not engaged in business within the state, or which is engaged in interstate commerce, may maintain an action without alleging and proving that it has qualified to do business and has paid its license fees. *Rawleigh Co. v. Harper,* 173 Wash. 233, 22 P. (2d) 665; *Rawleigh Co. v. Graham,* 4 Wn. (2d) 407, 103 P. (2d) 1076; 129 A. L. R. 596; *Procter & Gamble Co. v. King County,* 9 Wn. (2d) 655, 115 P. (2d) 962; *Seavey Hop Corp. of Portland v. Pollock,* 20 Wn. (2d) 337, 147 P. (2d) 310. However, if the foreign corporation is doing business within the state, then it must qualify and pay its license fee in order to maintain an action. *Dalton Adding Mach. Sales Co. v. Lindquist,* 137 Wash. 375, 242 Pac. 643, and cases cited.

*Portland Ass'n of Credit Men, Inc. v. Earley,* 42 Wn.2d 273, 278, 254 P.2d 758 (1953). Moreover, "[t]he mere bringing of an action in this state does not constitute doing business in the state, so as to require a foreign corporation to pay an annual license fee." *Lilly–Brackett Co. v. Sonnemann,* 50 Wash. 487, 489, 97 P. 505 (1908).

*Procter & Gamble Co. v. King Cy.,* 9 Wn.2d 655, 659–60, 115 P.2d 962 (1941), states, concerning the burden of proof:

There is no presumption that, because a foreign corporation commences an action in the courts of this state . . ., it is doing business within this state. The burden to show the necessity for payment of license fee in such a case is upon the defendant. . . .

. . .

[The plaintiff] alleged that it was a foreign corporation, which [the defendant] admitted. While, unnecessarily, [the plaintiff] alleged that it was not engaged in business within this state, that allegation of a negative, which was a matter of defense, did not impose upon [the plaintiff] the burden of proving that it was not engaged in business within this state.

In the present case, Top Line alleged that it "is an Oregon Corporation and has satisfied all conditions precedent to the maintenance of this action." National Auction denied the allegation because of "insufficient information and belief on which to form an opinion." National Auction, which had the burden of proof, produced no evidence that

Top Line was doing business in Washington, so as to require Top Line to obtain a certificate of authority before bringing this action. The trial court properly found that "[b]oth parties are corporations in good standing."

## II

### CONVERSION

Second, National Auction assigns error to finding of fact 6.

> [Top Line] did not authorize the foregoing sale and no responsible agent of [Top Line] was aware of this sale. The Court finds from *conflicting testimony* that no representative of [Top Line] was present at the scene or authorized inclusion of these forklifts in the sale. IRECO Industries never paid [Top Line] for the two forklift trucks. IRECO Industries was adjudicated bankrupt April 26, 1978.

(Italics ours.) National Auction maintains that (1) proving that Top Line consented to the sale should not have been its burden, (2) the evidence establishes that Top Line expressly or impliedly consented to the sale, and (3) the evidence that Top Line was *unaware* of the sale does not establish lack of consent.

Restatement (Second) of Torts § 222 A(1) (1965) defines conversion as follows:

> Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

It also has been defined as "the act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" *Judkins v. Sadler–MacNeil,* 61 Wn.2d 1, 3, 376 P.2d 837 (1962) (quoting W. Stallybrass, *Salmond on Torts* § 78, at 310 (9th ed. 1936)).

An auctioneer's liability for the unauthorized sale of property is based on agency. The auctioneer stands in the shoes of his principal and is liable for conversion when the owner or mortgagee *is unaware of or has not consented to*

*the sale.* Under the majority rule, the auctioneer's good faith, innocence, or lack of knowledge of the plaintiff's interest is no defense. *See* 7 Am. Jur. 2d *Auctions and Auctioneers* § 69 (1980); 7A C.J.S. *Auctions and Auctioneers* § 24 (1980); Annot., 96 A.L.R.2d 208 (1964). In Washington, however, *actual or constructive notice* of the plaintiff's interest is required before liability will attach.

> [A]n auctioneer selling mortgaged personal property, without the knowledge or consent of the mortgagee, would be liable for the conversion of the mortgaged property, if he had either actual or constructive notice of the mortgagee's interest therein.

*Bunn v. Walch,* 54 Wn.2d 457, 460, 342 P.2d 211 (1959). In *Bunn,* the auctioneer did have actual knowledge of the mortgagees' interest, but the mortgagees were denied recovery because they impliedly consented to the sale.

> Their presence and cooperation in the auction was an acquiescence in the sale, which imports consent and which bars them from any recovery for conversion of the mortgaged property. Where a party knows what is occurring and would be expected to speak, if he wished to protect his interests, his acquiescence manifests his tacit consent.

*Bunn,* at 463. The court noted that the mortgagees' rights "would have been clearer had they never heard of the sale; or had they heard of it, but remained away from it—for, under such circumstance, the auctioneer would have been liable for the conversion of the mortgaged property." *Bunn,* at 464. In the present case, National Auction properly was charged with constructive notice of Top Line's interest because of the U.C.C. filings in Oregon.

In *Colorado Bank & Trust Co. v. Western Slope Invs., Inc.,* 36 Colo. App. 149, 539 P.2d 501 (1975), a bank held a perfected security interest on the debtor's crops, farm equipment and cattle, having filed a financing statement with the county clerk. Under the security agreement, the debtor was required to obtain the prior written consent of the secured party before sale of any of the collateral. Without the bank's consent, the debtor consigned 54 head of

cattle for auction to the auctioneer, Western Slope. Following the auction, the net proceeds of the sales were delivered to the debtor who did not account for them to the bank. The court held that the auctioneer as well as the purchasers were liable and commented in part:

[T]he jury was instructed that:
"An auction company that sells property in behalf of another who holds the property subject to a perfected security interest, and the purchaser thereof, are each liable to the holder of the security interest for the fair value of the property sold, regardless of whether the auction company or purchaser had actual knowledge of the existence of the security interest or the other's want of authority to sell, in the absence of facts showing acquiescence or consent on the part of the holder of the security interest."

The above instruction states the applicable law on this issue where, as here, the proceeds were turned over to the debtor. *See* Annot., 96 A.L.R.2d 208; *Commercial Credit Corp. v. Joplin Automobile Auction Co.,* 430 S.W.2d 440 (Mo. Ct. App.).

*Colorado Bank & Trust Co.,* at 154.

National Auction complains that it had the burden of proving Top Line consented to the sale. However, as plaintiff, Top Line had the burden of proving that the sale was not authorized. Evidence that the owner was unaware of the sale is sufficient, *see Bunn,* at 460, 463. It follows that if Top Line was not aware of the sale, it could not have consented to it. Substantial evidence supports the trial court's finding that "no responsible agent of [Top Line] was aware of this sale." Indeed, National Auction concedes that a Top Line employee, employed at the time of the sale, "stated positively that he knew nothing about any April 1977 auction." National Auction's contention that the trial court was required to accept the "uncontroverted" deposition testimony of one of its witnesses is not supported by any citation of authority and need not be considered further in light of the substantial evidence supporting the court's findings.

Third, National Auction assigns error to finding of fact 3, which provides in part: "Included in the equipment sold by [National Auction] were two of the leased forklift trucks, a model C–500–HY45 and a model C–500–FS30." National Auction argues that the evidence was insufficient to establish that the two forklifts sold were the ones belonging to Top Line. The trucks were identified by model number, not serial number, although the serial numbers appeared in the leases from Top Line to IRECO. The testimony of National Auction's president, Mr. Etherton, provides substantial evidence to support the court's finding. Moreover, at trial there appeared to be no dispute over the original ownership of the trucks. Mr. Etherton testified:

Q Okay. And do you agree that, turning to Page 3 of Exhibit 2, that two Clark forklift trucks we have sued you for here are listed?
A Yes.
Q Your answer is yes?
A Yes.

. . .
Q Is this, then, a fair statement, Mr. Etherton, that you sold my client's two forklifts to what you considered to be bona fide purchasers?
A Right.

The trial court properly entered the challenged finding.

Finally, National Auction argues that its exhibit 12 should have been admitted into evidence. The exhibit is not part of the record before this court and neither the briefs nor the verbatim report of proceedings shed any light on its contents. National Auction maintains that the exhibit was an admission against interest. *See* ER 804(b)(3). National Auction has not supported its contention with argument or citation of authority. Accordingly, we will not consider the alleged error on appeal. *See Hansen v. Wightman,* 14 Wn. App. 78, 88–89, 538 P.2d 1238 (1975).

The judgment is affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.