[No. 7332–7–III.   Division Three.   October 14, 1986.]

GREEN THUMB, INC., *Respondent,* v. GREGG TIEGS, ET AL, *Appellants.*

*Thomas W. Roach* and *Campbell, Johnston & Roach,* for appellants.

*Roger L. Olson* and *Olson & Olson,* for respondent.

THOMPSON, J.—Gregg and Vikki Tiegs, doing business as Superior Seeds, appeal the trial court's judgment against them in the amount of $16,298.43, plus interest. The controlling issue is whether Green Thumb, Inc., was barred by RCW 23A.32.190 from filing suit in the state of Washington.[1] We affirm.

Green Thumb, Inc., an Idaho corporation with its principal place of business in Caldwell, Idaho, is a wholesaler and retailer of agricultural seed products. Gregg and Vikki Tiegs, during times relevant to this lawsuit, were engaged in agricultural seed sales as a sole proprietorship under the name Superior Seeds. The Tiegses had agreements with a number of seed companies and distributors to sell several varieties of agricultural seeds.

During 1981, 1982, and 1983, Green Thumb, Inc., delivered seed on consignment to the Tiegses' place of business in the Tri–Cities area of Washington. The seed was stored by the Tiegses in the Pasco area and was sold to whomever they might personally contact. As the seed was sold, the Tiegses would remit $3 a bag for each bag sold to Green Thumb, Inc.

---

[1]RCW 23A.32.190:

"Transacting business without certificate of authority. No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority."

Due to the Tiegses' efforts, Green Thumb, Inc., had seed sales in Washington of approximately $1,800 in 1981, $6,500 in 1982, and $3,200 in 1983. Green Thumb, Inc., employees did come to the state of Washington, but did not seek out customers. On one occasion Green Thumb, Inc., checked on a farmer's complaint and inspected his crop in Washington. Tiegses and Green Thumb, Inc., terminated their relationship in 1983 at a time when a sizable quantity of seed remained warehoused with the Tiegses. Green Thumb, Inc., filed this suit against the Tiegses seeking $16,298.43 claimed owed on seed retained and no longer salable due to storage damage. The Tiegses moved to dismiss based on RCW 23A.32.190, which in substance prohibits foreign corporations which are transacting business in this state from filing suit if they do not have a certificate of authority. It is undisputed that Green Thumb, Inc., was not licensed under a certificate of authority within Washington State.

Based on the testimony presented during trial, the trial court determined that Green Thumb, Inc., was not transacting business in Washington sufficient to require the procurement of a certificate of authority, denied the Tiegses' motion under RCW 23A.32.190, and entered judgment against them for the full amount sought.

In deciding whether a foreign corporation is transacting business within Washington State so as to require a certificate of authority, cases involving "doing business" for purposes of obtaining personal jurisdiction over foreign corporations are of no assistance. A foreign corporation may be conducting business sufficient to subject it to service of process and personal jurisdiction and yet insufficient to require licensure. *Lawyers Coop. Pub'g Co. v. Kuntz,* 73 Wn.2d 674, 676, 440 P.2d 813 (1968). The court in *Lawyers Coop.* made it clear that the character and quality of business transactions within Washington State must be substantial for licensure to be required.[2]

---

[2]Although *Lawyers Coop.* involved interpretation of a prior statute controlling

In *Lawyers Coop.,* a New York corporation solicited book sales in state, through its agents. Acceptance of the contract occurred at the corporation's home office, out of state. The court found such contacts insufficient to surmount the constitutional prohibition against burdening interstate commerce. Thus, if a foreign corporation's intrastate transactions are only "an incidental part of the foreign corporation's regular interstate commerce . . .", *Lawyers Coop.,* at 676, such transactions cannot subject it to licensure by the State.

Cases in Washington finding the actions of a foreign corporation extensive enough to require licensure have focused on a physical presence and conduct of business, usually through agents. In *Dalton Adding Mach. Sales Co. v. Lindquist,* 137 Wash. 375, 242 P. 643 (1926), the plaintiff foreign corporation had an agent for sale of their adding machines installed in an office in Seattle. The machines were sent to the agent who then displayed them and took orders to be filled from in–state stock. The court found this fact pattern, especially the shipment of products in state before orders were taken, to constitute the necessary transacting of business that would require obtaining a certificate of authority.

Federal cases involving other state statutes similar to RCW 23A.32.190 are consistent. The United States Supreme Court has held repeatedly that a state cannot discriminate against a foreign corporation engaged in interstate commerce merely because it failed to qualify to do business in that state. *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 42 L. Ed. 2d 195, 95 S. Ct. 260 (1974); *Dahnke–Walker Milling Co. v. Bondurant,* 257 U.S. 282, 66 L. Ed. 239, 42 S. Ct. 106 (1921). Importing products from one state into another, plus every negotiation, contract, trade, and dealing between citizens of different states which con-

the question of licensure and bar from suit of foreign corporations, *see Top Line Equip. Co. v. National Auction Serv., Inc.,* 32 Wn. App. 685, 649 P.2d 165 (1982), the same analysis applies to RCW 23A.32.190, at issue here.

template and cause such importation, is a transaction in interstate commerce and may not be burdened by state regulation. *Furst v. Brewster,* 282 U.S. 493, 497, 75 L. Ed. 478, 51 S. Ct. 295 (1931).

The arrangement between the Tiegses and Green Thumb, Inc., has been characterized as an agency relationship by the Tiegses, and as a consignment sale by Green Thumb, Inc. Evidence was presented indicating that the Tiegses were a sole proprietorship, engaged in sales of seed furnished by several distributors, and that seed was sold on a consignment basis. Green Thumb, Inc.'s owner, Rogna Burnett, testified that the Tiegses received a $3 "credit" for each bag sold. The Tiegses did not believe they had any contract with anyone in this dispute, including Green Thumb, Inc., and a rival company, that would limit sales activities on their own behalf. The Tiegses stored the seed in their own garage.

■■ Mr. Burnett had numerous contacts on behalf of Green Thumb, Inc., with the Tiegses regarding seed sales and came to Washington to inspect crop damage from alleged defective seed. However, Mr. Burnett did not control their sales, and the seed delivered to the Tiegses was stored by them for sale to whomever they chose. The trial judge found this did not constitute "doing business" within the meaning of RCW 23A.32.190 requiring licensure. In reviewing findings of fact, this court is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings in turn support the trial court's conclusions of law and judgment. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 82, 701 P.2d 1114 (1985). Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premises. *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 545 P.2d 1193 (1976).

The trial court was faced with evidence indicating that Green Thumb, Inc., had no direct ongoing physical presence in Washington State, nor any direct contractual or common law agency relationship with the Tiegses. On the

other hand, the Tiegses argued evidence established proof of the existence of a commission merchant or factor arrangement and the existence of this agency relationship obligated Green Thumb, Inc., to obtain a certificate of authority in the state of Washington. Resolution of these issues based on the conflicting evidence and arguments falls within the scope of the trial court's duties as trier of fact. The court's finding the delivery of seed from outside the State of Washington on consignment did not constitute doing business for purposes of registration is supported by substantial evidence sufficient to persuade a fair–minded person of the truth of that finding. A mere consignment does not transform essentially interstate commerce into intrastate. Nor does such arrangement create the type of agency partially relied on in *Dalton Adding Mach. Sales Co.* to constitute the necessary transacting of business requiring licensure. *See Matsumura v. Eilert,* 74 Wn.2d 362, 444 P.2d 806 (1968). This court may not substitute its judgment for that of the trial court but must affirm the trial court's decision if the requisite substantial evidence exists. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Such evidence does exist and supports the finding that Green Thumb, Inc., was not doing business requiring the procurement of a certificate of authority in the state of Washington. Thus, the court did not err in concluding that Green Thumb, Inc., was not barred from filing suit in this state.

Affirmed.

GREEN, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied November 7, 1986.