[No. 7882–5–III. Division Three. May 12, 1988.]

ROBERT J. FRISCH, ET AL, *Respondents,* v. VICTOR INDUSTRIES, INC., *Appellant.*

*Stanley Kempner* and *Goss, Moe & Sampson,* for appellant.

*Roger Clement* and *Gose & Clement,* for respondents.

McINTURFF, C.J.—The Superior Court, finding Victor Industries converted stock, entered judgments in favor of Mr. Frisch and Mr. Wellhoff. We affirm the judgments.

Victor Industries, Inc., formerly known as Kaslo Mines Corporation, is organized under Idaho law. Victor transacts business in Washington, maintaining a corporate office in Bellevue, Washington. Vic and Darlene Boykiw are shareholders, officers and directors of Victor.

Robert Frisch was an officer, director and shareholder of Kaslo. The court found he received 93,217 shares of Kaslo common stock in exchange for cash and services rendered. Roy Wellhoff was also an officer, director and shareholder of Kaslo; the court found he received 148,330 shares of Kaslo common stock for cash and services rendered.

Around January 1981 Kaslo changed its name to Victor Industries, Inc. Kaslo sent notices to its shareholders, including Mr. Frisch and Mr. Wellhoff, asking them to turn in their Kaslo stock and receive 1 share of Victor stock for every 10 shares of Kaslo then owned. Mr. Frisch presented his stock certificates and transfer was denied. Mr. Wellhoff also presented two of his four stock certificates for transfer. The transfer agent refused to transfer the shares. Although Mr. Wellhoff did not actually turn in two other stock certificates to the stock transfer agent, Mr. Wellhoff's attorney was informed Mr. Boykiw would not transfer Mr. Wellhoff's shares.[1] At some point, two of Mr. Wellhoff's stock certificates were lost.

The court found Mr. Frisch and Mr. Wellhoff had made repeated demands to Victor to issue its stock and that Victor had wrongfully converted their Kaslo stock. Mr. Frisch was found to be entitled to 9,322 shares of Victor stock valued at $4 per share. Mr. Wellhoff was found to be entitled to 10,000 shares of Victor stock, valued at $2.85 per share, under two of his certificates. Judgments against Victor (but not against Vic or Darlene Boykiw individually) were entered in favor of Robert Frisch ($37,288) and Roy Wellhoff ($28,500). Further, the court ordered Victor to issue 4,833 shares of stock to Mr. Wellhoff in exchange for Kaslo certificates 462 and 463 (allegedly lost), representing 3,333 and 1,500 shares respectively.

■ The first issue is whether Victor is precluded by

---

[1] Mr. Boykiw testified stop orders had been placed against the transfer of Mr. Wellhoff's stock although later in his testimony Mr. Boykiw contradicted his earlier testimony.

RCW 23A.32.190 from appealing because it is a foreign corporation not authorized to transact business in Washington. RCW 23A.32.190 provides, in part:

> The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state.

Here, Victor is *defending* a conversion action; thus, it is not precluded from doing so by RCW 23A.32.190.[2] Neither is it precluded from appealing the decisions.

The second issue is whether the court erred in awarding Mr. Wellhoff a judgment for conversation of his stock although he did not provide either a bond of indemnity as required by RCW 62A.8–405(2) or an affidavit of lost certificate.

Victor claims the court erroneously entered finding of fact 8, which provided: "That Robert J. Frisch and Roy J. Wellhoff have made repeated demands and Victor Industries, Inc. has refused to issue Victor Inc. stock in exchange for the Kaslo stock and wrongfully converted said stock." A finding of fact which is supported by substantial evidence will not be reversed on appeal. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.*, 106 Wn.2d 391, 397, 722 P.2d 787 (1986). Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise. *Group Health,*

---

[2]Appellate cases construing this statute have dealt with situations where the plaintiff, not the defendant, was a foreign corporation. *Green Thumb, Inc. v. Tiegs,* 45 Wn. App. 672, 674, 726 P.2d 1024 (1986); *Top Line Equip. Co. v. National Auction Serv.,* 32 Wn. App. 685, 649 P.2d 165 (1982). Washington's statute is unlike the statutes of some other states which provide a noncomplying corporation cannot maintain, prosecute or *defend* an action until compliance with statutory provisions. Annot., 6 A.L.R.3d 326, 331 (1966). Even in such states, compliance with the statute while the case is pending will allow a foreign corporation to defend the action. *Vornado, Inc. v. Corning Glass Works,* 255 F. Supp. 216 (D.N.J. 1966); *aff'd,* 388 F.2d 117 (3d Cir. 1968).

at 397. The court found Mr. Wellhoff had tendered his shares. The record supports this finding. Mr. Wellhoff presented two certificates for transfer. Mr. Wellhoff again tendered all his shares including those represented by lost certificates, through his attorney, in contacting Mr. Boykiw and determining that Mr. Boykiw would not transfer the shares whether or not some shares were represented by lost certificates.

In *Top Line Equip. Co. v. National Auction Serv.*, 32 Wn. App. 685, 689, 649 P.2d 165 (1982) the court quoted the definition of conversion from Restatement (Second) of Torts § 222 A(1) (1965):

> Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

*Top Line Equip.*, at 689, also stated:

> It also has been defined as "the act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" *Judkins v. Sadler–MacNeil*, 61 Wn.2d 1, 3, 376 P.2d 837 (1962) (quoting W. Stallybrass, *Salmond on Torts* § 78, at 310 (9th ed. 1936)).

Damages for conversion of stock are measured by the value of the stock as of the date of the wrongful transfer or refusal to transfer. *Schneider v. Union Oil Co.*, 6 Cal. App. 3d 987, 993, 86 Cal. Rptr. 315, 318 (1970).

Victor asserts the court erroneously found it had converted Mr. Wellhoff's stock when Victor had no duty to issue the shares absent compliance with RCW 62A.8–405(2). We disagree.

RCW 62A.8–405(2) provides:

> If the owner of a certificated security claims that the security has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificated security or, at the option of the issuer, an equivalent uncertificated security in place of the original security if the owner:

(a) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser;

(b) files with the issuer a sufficient indemnity bond; and

(c) satisfies any other reasonable requirements imposed by the issuer.

RCW 62A.8–405(3) provides that if, after issue of a new certificated or uncertificated security, a bona fide purchaser of the original certificated security presents it for registration or transfer, the issuer may recover the new certificated security from the person it was issued to as well as recover under any rights on the indemnity bond.

The Washington comments to RCW 62A.8–405 (before the 1986 changes reflected in the above quote which amended RCW 62A.8–405(2) to only apply to certificated securities) state this section replaces a statute which provided for replacement of lost or destroyed certificates of shares through a court order. The official comments to the Uniform Commercial Code (§ 8–405) state the changes were made to require the issuer, in appropriate circumstances, to issue a new security in place of a lost, destroyed or stolen one, without a court order. The purpose of the change was to incorporate into the law the long–standing corporate practice of voluntarily issuing new certificates. "Where reasonable requirements are satisfied and a sufficient indemnity bond supplied, a court order is no longer necessary but, of course, the court may compel a recalcitrant issuer to take action." Uniform Commercial Code § 8–405 Official Comment 2, 2A U.L.A. 336 (Supp. 1988). However, no authority has been cited on the question of whether the exclusive means of obtaining replacement certificates is to comply with the three requirements of RCW 62A.8–405(2) or failure to comply with this provision prevents a damage recovery for conversion.

Victor asserts cases from other jurisdictions should persuade the court that Victor has no obligation to issue new certificates absent compliance with RCW 62A.8–405(2). *Glaser v. Texon Energy Corp.,* 702 F.2d 569 (5th Cir. 1983)

held a stockholder who did not comply with a Texas statute requiring the issuer to issue a new security in place of a lost one cannot compel the issuer to give him a new certificate.[3] *Glaser* at 571–72, rejected the argument that compliance with this statute was only one means of obtaining a certificate to replace a lost certificate. *Glaser* stated that the comments suggest relief will be forthcoming only where reasonable requirements are satisfied. This interpretation was in accordance with the tendency of the state courts to insist on strict compliance with the code.

*Merrill Lynch Pierce Fenner & Smith, Inc. v. North European Oil Royalty Trust,* 490 A.2d 558 (Del. 1985) construed a Delaware statute (identical to the Texas statute in *Glaser*) and a statute which provided that a corporation "*may* issue a new certificate of stock in the place of any certificate theretofore issued by it, alleged to have been lost, stolen, or destroyed." *Merrill Lynch,* 490 A.2d at 561 (quoting 8 Del. Code § 167). The court held the latter statute is permissive, allowing the corporation to choose to issue replacement certificates, although it need not do so. However, it found the former statute mandatory, requiring the corporation to issue new certificates when the three requirements are met.[4]

---

[3]The Texas statute at issue is worded similarly to RCW 62A.8–405(2), although the words "*must* issue" are replaced by "shall issue" in the Washington statute:

> Where the owner of a security claims that the security has been lost, destroyed or wrongfully taken, the issuer must issue a new security in place of the original security if the owner
> (1) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser; and
> (2) files with the issuer a sufficient indemnity bond; and
> (3) satisfies any other reasonable requirements imposed by the issuer.

*Glaser,* 702 F.2d at 571 (quoting Tex. Bus. & Com. Code Ann. § 8.405(b) (Vernon 1968)).

[4]*See also* Annot., *Construction and Effect of UCC Art 8, Dealing With Investment Securities,* 21 A.L.R.3d 964, 982 (1968).

Mr. Wellhoff claims the fact Mr. Boykiw would not have issued the Victor stock in exchange for the Kaslo stock had Mr. Wellhoff presented the Kaslo stock or complied with the lost certificate provisions should exempt him from compliance with RCW 62A.8–405(2). The record supports Mr. Wellhoff's contention: Mr. Shelledy, Mr. Wellhoff's attorney, testified Mr. Boykiw refused to transfer Mr. Wellhoff's stock, regardless of the fact some certificates were lost, although the record is unclear as to why Mr. Boykiw refused to transfer Mr. Wellhoff's shares. Mr. Shelledy testified Mr. Boykiw gave him various objections to transferring Mr. Wellhoff's stock, including Mr. Wellhoff's failure to produce records showing he had provided consideration for his shares in the form of a mining claim transferred to the corporation or services rendered to the corporation. These reasons do not focus on lack of compliance with RCW 62A.8–405(2). Further, Mr. Shelledy testified at trial he would have supplied an indemnity bond and affidavit of lost certificate on Mr. Wellhoff's stock had Mr. Boykiw requested one. However, Victor did not ask Mr. Wellhoff to comply with RCW 62A.8–405(2).

Waiver is the intentional or voluntary relinquishment of a known right in existence at the time of the waiver. *Ferndale v. Friberg,* 107 Wn.2d 602, 607, 732 P.2d 143 (1987). Victor knew it had the right to demand compliance with RCW 62A.8–405(2), having been supplied with an affidavit of lost certificates on Mr. Shelledy's personal shares. Yet Victor made no request that Mr. Wellhoff comply with RCW 62A.8–405(2). It cannot now avoid liability for conversion of Mr. Wellhoff's shares by arguing Mr. Wellhoff did not comply with RCW 62A.8–405(2).

The third issue is whether it was error to conclude Mr. Frisch was entitled to transfer his shares since he failed to establish by competent proof that he acquired the stock for value.

Victor argues finding of fact 5, regarding Mr. Frisch's ownership of shares of common stock in Kaslo and their value at the time of conversion, is not supported by the

evidence. Mr. Frisch contends the finding is supported by the record and receipt of stock for services was authorized by statute in effect at the time Mr. Frisch received his shares.

Finding of fact 5 provides:

That Plaintiff, Robert J. Frisch, was an officer, director and shareholder of the predecessor corporation, Kaslo. Robert J. Frisch received 93,217 shares of the common capital stock of Kaslo in exchange for cash and services rendered.

The minutes of the board of directors state Mr. Frisch was entitled to a salary of $150 per month for his services. Further, there is testimonial evidence to support the finding that Mr. Frisch received his common stock shares in exchange for consideration, *i.e.,* cash and services rendered. Mr. Wellhoff testified both he and Mr. Frisch provided services to develop the Kaslo Mine property as well as spent their own money on traveling, gas, oil, and motel expenses for which they received Kaslo stock as compensation. Mr. Wellhoff stated Mr. Frisch provided services for Kaslo by doing all the work of a corporate secretary which, among other things, resulted in putting the books of the company in good order. Mr. Frisch testified he purchased some Kaslo stock and received the remainder of his stock for services rendered; he received no income or salary of any kind other than the shares of stock. This testimony provides substantial evidence to support the court's finding that Mr. Frisch received his stock in exchange for cash and services rendered. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 397, 722 P.2d 787 (1986).

Mr. Frisch argues former RCW 23A.08.160,[5] repealed by Laws of 1985, ch. 290, § 25, p. 1023, permitted payment for stock in a corporation to be in the form of services actually

---

[5]Former RCW 23A.08.160 (Laws of 1965, ch. 53, § 19):

"Payment for shares. The consideration for the issuance of shares may be paid in whole or in part, in money, in other property, tangible or intangible, or in labor

performed. He argues he has provided evidence his stock was received for services rendered.

Victor, however, contends Mr. Frisch has failed to show documentation in the corporate minutes of an award of stock in lieu of his salary. Further, Victor claims the shares Mr. Frisch claims are his were treasury shares and as such may be disposed of for consideration fixed by the board of directors under former RCW 23A.08.150.[6] The board minutes do not fix the value of the treasury stock issued to Mr. Frisch.

Victor cites no authority for its contention that Mr. Frisch may only prove his receipt of stock for services by producing minutes of the board of directors that provide for issuance of stock to Mr. Frisch for his services. RCW 23A.08.150 allows a corporation to dispose of treasury shares for consideration fixed by the board of directors. While a minute record would be preferable, the statute does not require minutes fixing such consideration in order to prove ownership by a shareholder, even if the shareholder is a former director.[7]

---

or services actually performed for the corporation. When payment of the consideration for which shares are to be issued shall have been received by the corporation, such shares shall be deemed to be fully paid and nonassessable.

"Neither promissory notes nor future services shall constitute payment or part payment, for shares of a corporation.

"In the absence of fraud in the transaction, the judgment of the board of directors or the shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive."

[6]Former RCW 23A.08.150 (Laws of 1979, ch. 16, § 9):

"Consideration for shares. Shares having a par value may be issued for such consideration expressed in dollars, not less than the par value thereof, as shall be fixed from time to time by the board of directors.

". . .

"Treasury shares may be disposed of by the corporation for such consideration expressed in dollars as may be fixed from time to time by the board of directors."

[7]We note that *Murphy v. Panton,* 96 Wash. 637, 640, 165 P. 1074 (1917) holds stock once issued carries with it a presumption that it was acquired for consideration. There being no allegations of fraud on the part of Mr. Frisch, this presumption becomes operative.

The judgments for Mr. Wellhoff and Mr. Frisch are affirmed.

GREEN and MUNSON, JJ., concur.